# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ———————————————————— ) | |
| COREY L. MCFADDEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 14-1115 (RBW) |
| ) | |
| WASHINGTON METROPOLITAN AREA ) | |
| TRANSIT AUTHORITY, et al., ) | |
| ) | |
| Defendants. ) | |
| ———————————————————— ) | |

## MEMORANDUM OPINION

This civil suit is currently before the Court on several motions: (1) the Plaintiff's Motion

to Stay Proceedings Pending Appeal ("Stay Mot."); (2) the Plaintiff's Motion for the Honorable

Court to Amend [Its April 23, 2015] Order ("Amend Mot."); (3) the Plaintiff's Motion for Leave

to File Second Amended Complaint ("Leave Mot."); and (4) the Plaintiff's Motion for Judgment

on the Pleadings ("J. Mot.").  After careful consideration of the parties' submissions,[1] and for the

---

[1] In addition to the motions already identified, the Court considered the following filings in rendering its decision: (1) Defendant WMATA's Opposition to [the] Plaintiff's Motion to Stay Proceedings Pending Appeal ("WMATA Opp'n to Stay Mot."); (2) the Plaintiff's Response to [Defendant WMATA's] Opposition to His Motion to Stay ("Resp. to WMATA Opp'n to Stay Mot."); (3) Defendant WMATA's Opposition to [the] Plaintiff's Motion to Amend [the April 23, 2015] Order ("WMATA Opp'n to Amend Order"); (4) the Plaintiff's Reply to Defendant WMATA's Opposition to His Motion for the Honorable Court to Amend [Its April 23, 2015 Order] ("Amend Reply"); (5) Defendant Leonard Hertzberg, M.D.'s Opposition to [the] Plaintiff's Motion for Leave to File Second Amended Complaint and Supplemental Motion to Dismiss ("Hertzberg Opp'n to Leave Mot."); (6) Defendant WMATA's Opposition to [the] Plaintiff's Motion for Leave to File Second Amended Complaint ("WMATA Opp'n to Leave Mot."); (7) Defendant Local 689 Opposition to [the] Plaintiff's Motion for Leave to File Second Amended Complaint ("Union Opp'n to Leave Mot."); (8) the Plaintiff's Reply to WMATA and [Local] 689 Defendants' Opposition to His Motion for Leave to File Second Amended Complaint ("Leave Reply I"); (9) the Plaintiff's Reply [to] Defendant[] Hertzberg's Opposition to His Motion for Leave to File Second Amended Complaint ("Leave Reply II"); (10) the Plaintiff's Affidavit ("Pl.'s Aff."); (11) the Plaintiff's Memorandum in Support of His Motion for [Judgment] on the Pleadings in Part ("J. Mem."); (12) Defendant Leonard Hertzberg, M.D.'s Opposition to [the] Plaintiff's Motion for Judgment on the Pleadings in Part ("Hertzberg Opp'n to J. Mot."); (13) Defendant WMATA's Opposition to [the] Plaintiff's Motion for Judgment on the Pleadings in Part Against Dr. Hertzberg ("WMATA Opp'n to J. Mot."); and (14) the Plaintiff's Reply to Defendant Hertzberg's Opposition to His Motion for [Judgment] on the Pleadings ("J. Reply").

(continued . . . )

reasons that follow, the Court will deny the motion to stay the proceedings in this case, deny the

motion for the Court to amend its April 2015 order, deny in part and grant in part the motion for

leave to file another amended complaint, and deny the motion for judgment on the pleadings.

## I.     BACKGROUND

In the Court's January 2015 Order, the Court dismissed certain claims in this case[2] filed

by the pro se plaintiff, Corey L. McFadden, against the defendants, the Washington Metropolitan

Area Transit Authority ("WMATA"), the Amalgamated Transit Union Local 689 ("Union"), and

various individuals employed by WMATA and the Union.  See generally January 22, 2015 Order

("Jan. 2015 Order") at 13-21 (dismissing the plaintiff's claims of defamation, intentional

infliction of emotional distress, civil conspiracy, and assault), ECF No. 27.  Shortly after the

Court issued its January 2015 Order, the plaintiff sought "reconsideration of two aspects of . . .

[that Order]: (1) dismissal of the state law claims against Dr. Leonard Hertzberg . . . with

prejudice; and (2) dismissal of the claims against Jackie Jeter and Douglas Taylor on the basis

that they are immune from suit as union officials."  April 23, 2015 Order ("Apr. 2015 Order") at

1 n.1, ECF No. 39.  As to the first request, the Court agreed to amend its January 2015 Order so

that the plaintiff's state law claims against Dr. Hertzberg were dismissed without prejudice, see

id. at 1 n.2, 2, allowing the plaintiff to cure the jurisdictional defect it identified in the plaintiff's

---

( . . . continued)

An additional filing was made in this case—Defendant Leonard Hertzberg, M.D.'s Response to [the] Plaintiff's Reply to Defendant Hertzberg's Opposition to [the] Plaintiff's Motion for Leave to File Second Amended Complaint.  Because the filing amounts to a surreply and leave to file it was not sought by Dr. Hertzberg, see, e.g., United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc., 238 F. Supp. 2d 270, 276 (D.D.C. 2002) ("A surreply may be filed only by leave of [the] Court, and only to address new matters raised in a reply, to which a party would otherwise be unable to respond."), the Court will not consider it, see, e.g., Williams v. Court Servs. & Offender Supervision Agency for D.C., 110 F. Supp. 3d 111, 126 (D.D.C. 2015) (striking surreply from record when it was "unauthorized").

[2]  The Court presumes that the parties are familiar with the allegations in this case, see January 22, 2015 Order ("Jan. 2015 Order") at 2-5 (providing factual background), ECF No. 27, and thus will dispense with a detailed recitation of those allegations.

first amended complaint through another amended complaint, see Jan. 2015 Order at 7-8.  As to the second request, the Court refused to reconsider its conclusion that Ms. Jeter and Mr. Taylor were immune from the plaintiff's lawsuit.[3]  See Apr. 2015 Order at 1-2 n.3.

Thereafter, the plaintiff sought interlocutory review from the District of Columbia Circuit of the Court's dismissal of Ms. Jeter and Mr. Taylor from this case.  See Plaintiff's Civil Notice of Appeal ("Appeal Notice") at 1, ECF No. 45; see also Amend Mot. at 1.  In conjunction with his attempted interlocutory appeal, the plaintiff requested that this Court stay the proceedings in this case pending the outcome of that appeal.  See Stay Mot. at 1.  The plaintiff also moved to amend his complaint for a second time.  See Leave Mot. at 1.  Upon doing so, the plaintiff then quickly filed a motion for judgment on the pleadings against Dr. Herzberg, whom the Court had previously dismissed as a party in this case.[4]  See J. Mot. at 1.  Recently, the Circuit declined to

---

[3]  The plaintiff suggests that the Court applied the wrong standard of review in dismissing his claims against Ms. Jeter and Mr. Taylor.  See Amend Reply at 2.  Assuming the Court misspoke during an April 20, 2015 hearing on the plaintiff's motion for reconsideration, the Court refers the plaintiff to its January 2015 Order that laid out the standard of review the Court applied in forming its conclusion that neither Ms. Jeter nor Mr. Taylor were subject to suit in this case.  See Jan. 2015 Order at 5-6, 8-10; see also Apr. 2015 Order at 1-2 n.3.

[4]  The Court understands from comments made by the pro se plaintiff during this litigation that he has limited resources, and he is, therefore, advised that those resources are best used by filing any future motions after more thorough consideration.  Here, he knew that he faced opposition from multiple parties on the merits of his motion for leave to file an amended complaint.  Knowing that, he should have at least awaited a decision on that motion from the Court before attempting to have a judgment entered against a previously-dismissed defendant that his amended complaint would bring back into the case, but only if the Court found that it could properly exercise jurisdiction over him and those claims that plausibly state a claim for relief against him.  See Black v. LaHood, 882 F. Supp. 2d 98, 107 (D.D.C. 2012) (judgment on the pleadings premature where pleadings were not closed (citing Fed. R. Civ. P. 12(c)); Chang v. United States, 338 F. Supp. 2d 20, 21-22 (D.D.C. 2004) ("Given that discovery has not yet concluded in this case, . . . the Court agrees that granting the motion for judgment on the pleadings . . . would indeed be premature.").

Moreover, the pro se plaintiff has repeatedly accused the defendants of overwhelming him with significant paperwork to review, thereby exhausting his limited resources.  See, e.g., Leave Reply I at 7.  Regardless of the accuracy of the plaintiff's characterization of the defense tactics in this case, the plaintiff should carefully consider the need and substance of his own submissions to the Court, which invariably compel a response from the defendants, as they are highly inflammatory at times.  The Court reminds the plaintiff that his credibility before the Court is a valuable currency, and it should not be spent inundating the Court with motions that seem to be filed merely in retaliation against the defendants.  See, e.g., id. (suggesting that a motion for sanctions against WMATA and the Union is appropriate on the basis that they filed oppositions to the plaintiff's motion for leave to amend his complaint, which—somehow—necessarily means they acted in bad faith).

entertain the plaintiff's attempt for an interlocutory appeal of this Court's dismissal of Ms. Jeter and Mr. Taylor.  See Order at 1, McFadden v. Wash. Metro. Area Transit Auth., No. 15-7052 (D.C. Cir. Feb. 4, 2016), ECF No. 1597192.  The Court deems it prudent to now address the four motions currently pending before it.

## II.      STANDARD OF REVIEW

"A party may amend [his] pleading once as a matter of course" within twenty-one days following several designated events.  Fed. R. Civ. P. 15(a)(1).  However, after that time has elapsed, the initial pleading may be amended "only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  While the Court has sole discretion to grant or deny leave to amend, "[l]eave to amend a [pleading] should be freely given in the absence of undue delay, bad faith, undue prejudice to the opposing party, repeated failure to cure deficiencies, or futility."  Richardson v. United States, 193 F.3d 545, 548-49 (D.C. Cir. 1999) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).  The rationale for this perspective is that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."  Foman, 371 U.S. at 182.

Nevertheless, a "court may properly deny a motion to amend if the amended pleading would not survive a motion to dismiss," i.e., if it were futile to amend.  In re Interbank Funding Corp. Sec. Litig., 629 F.3d 213, 218 (D.C. Cir. 2010); see also James Madison Ltd. v. Ludwig, 82 F.3d 1085, 1099 (D.C. Cir. 1996) ("Courts may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss.").  Finally, the pleadings of pro se parties are to be "'liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]'"  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  But

even though a pro se complaint must be construed liberally, the complaint must still "present a

claim on which the court can grant relief."  Chandler v. Roche, 215 F. Supp. 2d 166, 168 (D.D.C.

2002) (citing Crisafi v. Holland, 655 F.2d 1305, 1308 (D.C. Cir. 1981)).

### III.    ANALYSIS

#### A.    Preliminary Motions

Several of the plaintiff's motions can be quickly resolved.  The Court will deny the

plaintiff's motion to stay the proceedings in this case as moot.  The Court has effectively stayed

the proceedings on its own, having awaited the Circuit's resolution of the plaintiff's attempt to

obtain an appeal before addressing the request for the stay.  See, e.g., November 16, 2015 Minute

Order (continuing case-management, status conference in light of appeal); see also October 23,

2015 Minute Order (granting extension of time for discovery because of appeal).  Now that the

Circuit has denied the plaintiff the opportunity to pursue an appeal, the Court will issue a revised

scheduling order at the status conference scheduled for March 18, 2016, at 3:30 p.m.[5]  Next, the

Court will deny the plaintiff's motion seeking permission to pursue an appeal as moot—his

attempt to pursue an appeal having been heard by and ruled upon by the Circuit.[6]  And the Court

will deny the plaintiff's motion to have a judgment entered against Dr. Hertzberg as premature.[7]

As the Court will explain below, there is an outstanding question as to whether the Court has

personal jurisdiction over Dr. Hertzberg that must be explored more fully.  If the answer to that

---

[5]  The Court respectfully asks the plaintiff to refrain from filing any further motions until this time.  At the status conference, the plaintiff can inform the Court as to what, if any, additional motions he desires to file at this juncture of the case.

[6]  If the plaintiff wishes to remedy the defects identified by the Circuit in its Order and thinks that he can do so, the plaintiff should inform the Court of such an intention at the upcoming status conference.

[7]  To the extent the plaintiff seeks a judgment against Dr. Hertzberg because he allegedly perjured himself before the Court, he has not directed the Court to any authority—nor is the Court aware of any yet—that would allow for such a draconian outcome.

question is in the negative, then the Court would have no authority to enter a judgment against

Dr. Hertzberg.  If, on the other hand, the answer to that question is in the affirmative, then

judgment on the pleadings could be appropriate—albeit very unlikely.  Thus, the Court will

entertain any further motion for judgment on the pleadings only <u>after</u> the jurisdictional issue has

been resolved.  <u>See</u> <u>Black v. LaHood</u>, 882 F. Supp. 2d 98, 107 (D.D.C. 2012).

> **B.**     **The Motion For Leave To Amend**
>
> **1.**     **The Amendments Affecting Dr. Hertzberg**

The plaintiff's attempt to amend his complaint merits more discussion.  Dr. Hertzberg

contends that the plaintiff's proposed amendments are futile because they would not result in the

Court having either subject-matter jurisdiction or personal jurisdiction over him, Hertzberg

Opp'n to Leave Mot. at 2-7, and that even if the Court could properly exercise jurisdiction, the

amendments still do not state any claim for relief against Dr. Herzberg, <u>id.</u> at 7-12.  Dr.

Hertzberg is incorrect in almost all respects.[8]

First, the plaintiff's proposed amendments include a defamation claim against Dr.

Hertzberg for allegedly "creat[ing] an official record[,] which falsely labeled [the] [p]laintiff

with psychiatric and/or psychological conditions that he did not have," Leave Mot., Plaintiff's

Second Amended Complaint ("Second Am. Compl.") ¶ 107, that impaired his reputation at his

workplace, <u>see</u> <u>id.</u> ¶¶ 108, 110, 184.  Liberally construing and accepting as true the plaintiff's

allegations as it must, the Court finds that the plaintiff has stated a claim of defamation against

Dr. Hertzberg.  <u>See, e.g.</u>, <u>Jankovic v. Int'l Crisis Grp.</u>, 494 F.3d 1080, 1091 (D.C. Cir. 2007)

("[A] statement is 'defamatory' if it tends to injure the plaintiff in his trade, profession or

---

[8]  The Court notes that the plaintiff was a day late in filing his motion for leave to amend his complaint to remedy the jurisdictional defect with respect to Dr. Hertzberg.  Nevertheless, as the Court highlighted in its previous Order, it will overlook the delay, as it prefers to resolve disputes on their merits, and the one-day delay did not cause any prejudice to the defendants.  <u>See</u> Jan. 2015 Order at 10 n.8.

community standing, or lower him in the estimation of the community." (quoting Moss v.

Stockard, 580 A.2d 1011, 1023 (D.C. 1990))).  The fact that Dr. Hertzberg's written diagnosis of

the plaintiff may have been "pure opinion," Hertzberg Opp'n to Leave Mot. at 10, does not

insulate him from a defamation claim at this stage of the proceedings, see, e.g., Moldea v. New

York Times Co., 22 F.3d 310, 313 (D.C. Cir. 1994) ("[T]here is no wholesale exemption from

liability in defamation for statements of 'opinion.'  Instead, statements of opinion can be

actionable if they imply a provably false fact, or rely upon stated facts that are provably false."

(citing Moldea v. New York Times Co., 15 F.3d 1137, 1143-45 (D.C. Cir. 1994))); see also

Wallace v. Skadden, Arps, Slate, Meagher & Flom, 715 A.2d 873, 877-78 (D.C. 1998) ("It may

be that, at some subsequent stage of the case, the defendants will be able to present a defense of

truth or legitimate expression of opinion, or that the plaintiff will be unable to make an adequate

showing of malice.  Such a determination cannot, however, be made on the basis of the

complaint, standing alone." (footnotes omitted)).

 Second, and again liberally construing and accepting the plaintiff's allegations as true, the

Court further finds that the plaintiff has plausibly pleaded a claim for intentional infliction of

emotional distress against Dr. Hertzberg.  Cf. Carey v. Piphus, 435 U.S. 247, 262 (1978)

("[S]tatements that are defamatory per se by their very nature are likely to cause mental and

emotional distress . . . ."); Amobi v. D.C. Dep't of Corr., 755 F.3d 980, 996 (D.C. Cir. 2014)

(finding potentially "extreme and outrageous conduct" where incident report "contained several

glaring omissions, and at least one false statement").

 Third, the plaintiff's proposed amendments clarify that the Court can maintain subject-

matter jurisdiction over the state law claims asserted against Dr. Hertzberg under 28 U.S.C. §

1367 (2012), which permits the Court to exercise supplemental jurisdiction over such claims in

particular circumstances.  Leave Mot., Second Am. Compl. ¶ 7.  Supplemental jurisdiction is properly invoked where the state law claims "are so related to" federal claims such "that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  "In order for a federal claim and a state-law claim to form part of the 'same case or controversy,' the claims must derive from a 'common nucleus of operative fact.'"  Taylor v. District of Columbia, 626 F. Supp. 2d 25, 28 (D.D.C. 2009) (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966)).  Where they do, the Court has discretion to exercise its supplemental jurisdiction.  See 28 U.S.C. § 1367(c) (enumerating circumstances where "[t]he district courts may decline to exercise supplemental jurisdiction over a [state-law] claim"); see also Women Prisoners of the D.C. Dep't of Corr. v. District of Columbia, 93 F.3d 910, 920 (D.C. Cir. 1996).  Here, the only rebuff from Dr. Herzberg concerning the propriety of the Court exercising supplemental jurisdiction is that the Court does not "already [have] original jurisdiction" over him and so there is no jurisdiction to supplement.  Hertzberg Opp'n to Leave Mot. at 6 (emphasis added).  But a close reading of the supplemental jurisdiction statute makes clear that this is no basis for the Court to refrain from exercising supplemental jurisdiction.  28 U.S.C. § 1367(a) ("Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."); see also Grissom v. District of Columbia, 853 F. Supp. 2d 118, 127 (D.D.C. 2012) (explaining that where a "court ha[s] original jurisdiction over action against one defendant, it [also] ha[s] supplemental jurisdiction over claims against another defendant 'as the claims against all defendants arose from the same facts'" (quoting ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters, 645 F.3d 954, 963 (8th Cir. 2011))).

    Fourth, Dr. Hertzberg's contention that the Court lacks personal jurisdiction over him has some initial appeal.  In an affidavit submitted to the Court, Dr. Hertzberg represents that he has

no ties with the District of Columbia.  See Hertzberg Opp'n to Leave Mot., Affidavit of Leonard

Hertzberg, M.D. ("Hertzberg Aff.") ¶¶ 1-8.  Yet, the plaintiff has proffered evidence that implies

otherwise—a screen shot of Dr. Hertzberg's website, which suggests that he targets and solicits

business from residents in Maryland and the District of Columbia.  Leave Reply II, Ex. 3 (Dr.

Hertzberg Website) ("Dr. Hertzberg has performed over five hundred Independent Medical

Evaluations (IME) on behalf of attorneys, insurers, and employers in the state of Maryland and

Washington, D.C. areas.  He has testified in deposition as well as before Administrative Law

Judges and in Court over one hundred times.").  This information seemingly undermines the

representations in Dr. Hertzberg's affidavit.  Compare, e.g., Hertzberg Opp'n to Leave Mot.,

Hertzberg Aff. ¶ 8 ("I have no contacts in the District of Columbia." (emphasis added)), with

Reply to Leave Mot., Ex. 3 (Dr. Hertzberg Website) ("Dr. Hertzberg has performed over five

hundred Independent Medical Evaluations (IME) on behalf of attorneys, insurers, and employers

in the state of Maryland and Washington, D.C. areas." (emphasis added)), and J. Mem., Ex. 1

(Dr. Hertzberg's February 2014 letter to WMATA).  Given that this record at this juncture

causes the Court to have skepticism as to whether it does not have personal jurisdiction over Dr.

Hertzberg,[9] see D.C. Code Ann. § 13-423(a)(4) (2001) ("A District of Columbia court may

---

[9]  The Court entered the Uniform Resource Locator ("URL") for Dr. Hertzberg's website that appears on the plaintiff's submission into a web browser, and the browser indicated that the website no longer exists on the internet. See, e.g., Flynn v. Ohio Bldg. Restoration, Inc., 260 F. Supp. 2d 156, 161 (D.D.C. 2003) (Walton, J.) ("[W]hen a question of the [d]istrict [c]ourt's jurisdiction is raised, either by a party or by the court on its own motion[,] the court may inquire by affidavits or otherwise, into the facts as they exist." (ellipses omitted) (quoting Land v. Dollar, 330 U.S. 731, 735 n.4 (1947))).  What is potentially troubling about this result is that Dr. Hertzberg may have removed it from public access after the plaintiff captured the screen shot that was submitted to the Court.  If this is so, and Dr. Hertzberg cannot obtain an accurate archive of his website, including any interactive elements, the Court could find that he intentionally deprived the plaintiff of relevant information in this litigation and impose appropriate sanctions against him.  See Fed. R. Civ. P. 37(e)(2) ("If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the [C]ourt . . . upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may: (A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment.").

exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's . . . causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia . . . ."), it must afford the plaintiff an opportunity to conduct jurisdictional discovery,[10] see Brumley v. Dep't of Labor, No. 87-cv-3471(JHP), 1988 WL 75926, at *2 (D.D.C. July 13, 1988) ("[T]he present record leaves . . . [the Court] 'in the dark' as to whether any of the prongs of the [District of Columbia] long-arm statute afford a basis for . . . exercise of personal jurisdiction . . . .  Mindful of [the] plaintiff's pro se status and the precedents of this [C]ircuit, the [C]ourt is constrained to afford [the] plaintiff a period . . . in which to conduct limited discovery relevant to the issue[] of . . . personal jurisdiction.").  After jurisdictional discovery is completed, Dr. Hertzberg may, if appropriate, renew his motion to dismiss.

### 2.      The Amendments Affecting WMATA and Its Employees

As an initial matter, defendants WMATA and its employees oppose the plaintiff's attempt to obtain permission to file an amended complaint because they contend that the "[p]laintiff is essentially trying to undo many of the rulings made by the Court in the [January 2015] Order, principally the dismissal of the eight individual WMATA defendants."  WMATA Opp'n to Leave Mot. at 2.  The Court views plaintiff's conduct differently.  Rather than requesting reconsideration of the Court's previous rulings in its January 2015 Order, the plaintiff is in fact seeking leave to address the deficiencies in his complaint that were identified in the

---

[10]  The Court will set a discovery schedule at the forthcoming status conference.  The Court notes that Dr. Hertzberg could—in an effort to avoid jurisdictional discovery and conserve his resources—waive his personal jurisdiction defense for this case only.  If Dr. Hertzberg chooses this route, he shall so inform the Court at the status conference.

Court's Order.[11]  And those deficiencies have been remedied by the proposed amendments.

The Court dismissed the defamation claims against the individual WMATA defendants because they were "unable to prepare a response to the plaintiff's allegations concerning their alleged defamatory conduct," as "there [was] neither any indication as to how the plaintiff was defamed personally by each individual [WMATA] defendant nor any specific allegation as to the content or substance of the alleged defamatory statements."  Jan. 2015 Order at 15-16.  But the plaintiff has now provided more specificity in his proposed amended complaint.  See, e.g., Leave Mot., Second Am. Compl. ¶¶ 176-90.  Likewise, his proposed amendments also clarify that the theory behind his intentional infliction of emotional distress claims against the individual WMATA defendants is that they created a hostile work environment for the plaintiff through repeated harassment based on his disability, see, e.g., id. ¶¶ 151-53, 166-75, which establishes a prima facie case for these claims, see Howard Univ. v. Best, 484 A.2d 958, 986 (D.C. 1984) ("Repeated harassment may compound the outrageousness of incidents which, taken individually, might not be sufficiently extreme to warrant liability." (ellipses omitted) (quoting Boyle v. Wenk, 392 N.E.2d 1053, 1056 (Mass. 1979))); cf. Purcell v. Thomas, 928 A.2d 699, 711 (D.C. 2007) ("Creation of a hostile work environment by racial or sexual harassment may, upon sufficient evidence, constitute a prima facie case of intentional infliction of emotional distress." (quoting Howard, 484 A.2d at 986)).  It follows that the plaintiff's civil conspiracy claims against the individual WMATA defendants have been resurrected as well because defamation and intentional infliction of emotional distress are torts that may underlie civil

---

[11]  The deadline imposed by the Court to file an amended complaint as it related to Dr. Hertzberg did not affect the timing of when the plaintiff could request leave to amend his complaint as it relates to the remaining defendants. Indeed, the Court appreciates that the plaintiff sought leave to amend his complaint against all defendants at the same time.  See, e.g., Richardson, 193 F.3d at 548-49 ("Leave to amend a [pleading] should be freely given in the absence of undue delay, bad faith, undue prejudice to the opposing party, repeated failure to cure deficiencies, or futility." (citing Foman, 371 U.S. at 182)).

conspiracy claims.  See Jan. 2015 Order at 19 (dismissing civil conspiracy claims only "because the plaintiff ha[d] not adequately pleaded an underlying tortious act as a predicate for his civil conspiracy claim").

The individual WMATA defendants rely on immunity under the WMATA Compact, WMATA Opp'n to Leave Mot. at 3, to escape liability from the defamation, intentional infliction of emotional distress, and civil conspiracy claims, see Beebe v. Wash. Metro. Area Transit Auth., 129 F.3d 1283, 1288 (D.C. Cir. 1997) ("Section 80 of the [WMATA] Compact provides that the 'exclusive remedy' for any action for which WMATA is liable 'shall be by suit against the [WMATA].'"  In other words, for torts committed in the course of proprietary or ministerial functions, WMATA is liable and its employees immune." (quoting D.C. Code § 1-2431(80))). But these individual defendants have traveled down this path before, which leads to a dead end. McFadden v. Wash. Metro. Area Transit Auth., 949 F. Supp. 2d 214, 223 (D.D.C. 2013) (Walton, J.) ("In seeking to invoke immunity under the WMATA Compact here, the individual defendants merely cite the foregoing legal principles and proclaim victory.  They do not explain why their alleged defamatory statements fall within the WMATA Compact's grant of immunity, offering no argument on key issues such as whether their challenged conduct implicated non-immune 'proprietary' functions, or immune 'governmental' functions.  Because 'the burden of establishing immunity is on the official,' and because the individual defendants have utterly failed to carry that burden, the Court declines to dismiss the plaintiff's defamation claim on immunity grounds." (alteration and citations omitted) (quoting Beebe, 129 F.3d at 1287-89)).

Defendants WMATA and its employees also challenge the plaintiff's request for $10,000,000[12] in damages as "baseless."  WMATA Opp'n to Leave Mot. at 3; see also Union Opp'n to Leave Mot. at 1 (no legal basis for $10,000,000 recovery).  As an initial matter, the Court notes for the plaintiff's benefit that "[p]unitive damages are not recoverable in private suits under Title II of the ADA or Section 504 of the Rehabilitation Act."  Pierce v. District of Columbia, _ F. Supp. 3d _, _, 2015 WL 5330369, at *19 n.14 (D.D.C. 2015) (citing Barnes v. Gorman, 536 U.S. 181, 189 (2002)), reconsideration denied, No. 13-cv-0134 (KBJ), 2015 WL 7574750 (D.D.C. Nov. 25, 2015).  But punitive damages are available as damages based on liability for torts such as intentional infliction of emotional distress and defamation.  Oliver v. Mustafa, 929 A.2d 873, 878 n.2 (D.C. 2007) ("Intentional infliction of emotional distress, 'if proved, would provide an appropriate basis for an award of punitive damages, since it is by definition willful and outrageous conduct which society finds intolerable, and seeks to deter.'" (quoting Sere v. Group Hospitalization, Inc., 443 A.2d 33, 37-38 (D.C. 1982))); Ayala v. Washington, 679 A.2d 1057, 1070 (D.C. 1996) (punitive damages available for defamation claim).  It would, therefore, be improper for the Court at this juncture to deny the plaintiff an opportunity to amend his complaint on the basis of his request for $10,000,000 in damages.

Where defendants WMATA and its employees are correct though is that the plaintiff's attempt to bring a claim of disability harassment is futile.[13]  Leave Mot., Second Am. Compl. ¶¶ 166-75.  There is no separate cause of action for disability harassment under the Americans with

---

[12]  The plaintiff acknowledges that his proposed amended complaint inadvertently asserted $100,000,000, instead of $10,000,000, in damages.  See Leave Reply I at 7.

[13]  The Court's analysis concerning the plaintiff's attempted joinder of a disability harassment claim against defendant WMATA applies with equal force to the Union.

Disabilities Act or the Rehabilitation Act.[14]  Rather disability harassment is an element of the

plaintiff's hostile work environment claims under the ADA and the Rehabilitation Act.[15]  See,

e.g., Floyd v. Lee, 968 F. Supp. 2d 308, 328 (D.D.C. 2013) ("To establish a prima facie hostile

work environment claim based on disability, a plaintiff must allege facts demonstrating that: (1)

she is disabled or is perceived as disabled; (2) she was subjected to unwelcome harassment; (3)

the harassment occurred because of her disability or the perception that she was disabled; (4) the

harassment affected a term, condition, or privilege of employment; and (5) there is a basis for

holding the employer liable for the creation of the hostile work environment."); see also Adams

v. District of Columbia, 740 F. Supp. 2d 173, 189 (D.D.C. 2010) ("[A] hostile work environment

claim may [be] composed of single acts of harassment that are not actionable on their own[.]"

(citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002))).  Accordingly, leave to

amend would be futile with respect to the proposed disability harassment claim against

WMATA.

## IV.    CONCLUSION

To summarize, both the plaintiff's motion to stay the proceedings in this case and his

motion seeking permission to file an interlocutory appeal are denied as moot.  The plaintiff's

motion seeking a judgment on the pleadings against Dr. Hertzberg is premature because the

pleadings stage of this case has not yet concluded fully.  And that is because discovery into the

extent of Dr. Hertzberg's contacts with the District of Columbia is necessary to resolve the

---

[14]  The Court notes that "[w]hile this Circuit does not appear to have explicitly recognized such a [hostile-work-environment] claim under the ADA" or the Rehabilitation Act, "the Court presumes that it would." Elzeneiny v. District of Columbia, _ F. Supp. 3d _, _, 2015 WL 4975277, at *16 (D.D.C. 2015); see also Brown v. Snow, 407 F. Supp. 2d 61, 69 n.9 (D.D.C. 2005) ("The Court, however, notes that whether the Rehabilitation Act provides a cause of action for hostile work environment is not definitely decided.").

[15]  The standards "[t]o prevail on a hostile-work-environment claim under the ADA and the Rehabilitation Act . . . are 'substantively the same[.]'" Adams v. District of Columbia, 50 F. Supp. 3d 47, 52 (D.D.C. 2014) (quoting Faison v. Vance-Cooks, 896 F. Supp. 2d 37, 44 n.2 (D.D.C. 2012)), aff'd, 618 F. App'x 1 (D.C. Cir. 2015).

personal jurisdiction inquiry.  In the meantime, the plaintiff is permitted to amend his complaint such that it asserts intentional infliction of emotional distress, defamation, and civil conspiracy claims against the individual WMATA defendants.  He may also amend his complaint to assert intentional infliction of emotional distress and defamation claims against Dr. Hertzberg and state that supplemental jurisdiction is the basis for subject-matter jurisdiction over these claims against him.  He will also be permitted to claim $10,000,000 in damages against the defendants.[16]  He will not, however, be allowed to assert a claim of disability harassment as that theory of liability cannot be pursued as a cause of action under either the ADA or the Rehabilitation Act.

    **SO ORDERED** this 7th day of March, 2016.[17]

REGGIE B. WALTON
United States District Judge

---

[16]  The Court respectfully requests that the plaintiff take great care in drafting his second amended complaint for the sake of clarity.  By way of example, his current proposal identifies counts "XI – XXI" for defamation and then identifies counts "XX – XXX" for civil conspiracy of defamation.  The plaintiff should take every effort to ensure that further amendments of his complaint will not be necessary, or else he risks having a further attempt to amend the complaint denied.

[17]  The Court has contemporaneously issued an Order consistent with this Memorandum Opinion.