# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
COREY LEROY BEY,[1]            )
)
    Plaintiff,           )
)
    v.               )      Civil Action No. 14-1115 (RBW)
)
WASHINGTON METROPOLITAN    )
AREA TRANSIT AUTHORITY, <u>et al.</u>,   )
)
    Defendants.      )
_____)

## <u>MEMORANDUM OPINION</u>

The plaintiff, Corey LeRoy Bey, proceeding <u>pro se</u>, filed this civil suit against the

defendants, Washington Metropolitan Area Transit Authority ("WMATA"), Amalgamated

Transit Union Local 689 (the "Union"), and various individuals employed by both WMATA and

the Union. <u>See</u> Second Amended Complaint ("<u>Bey II</u> Compl.") ¶¶ 13–23, ECF No. 81. The

plaintiff asserts violations of the Rehabilitation Act of 1973, 29 U.S.C. § 701 (2012); the

American with Disabilities Act, 42 U.S.C. § 12102(2)(B) (2012); the Civil Rights Act of 1991,

42 U.S.C. §§ 1977, 1988 (2012); the Labor Management Relations Act, 29 U.S.C. § 185 (2012);

and common law claims for defamation, intentional infliction of emotional distress, and civil

conspiracy under District of Columbia law. <u>See</u> <u>Bey II</u> Compl. ¶¶ 122–89. Currently pending

before the Court are (1) Defendant ATU Local 689['s] Motion for Summary Judgment ("Union's

Summ. J. Mot."), ECF No. 130; WMATA Defendants' Motion for Summary Judgment

---

[1] At the time this case was initiated, the plaintiff was known as Corey LeRoy McFadden. <u>See</u> Plaintiff's Complaint (filed on June 30, 2014), ECF No. 1. However, on August 3, 2017, he filed a notice of name change with this Court, stating that "[f]rom this day forward, Corey LeRoy McFadden is not [his] name" and requesting that the Court refer to him as "Corey LeRoy Bey." <u>See</u> Public and Judicial Notice of Name Change and Declaration of Nationality, ECF No. 132. The Court will hereafter refer to the plaintiff as Corey LeRoy Bey.

("WMATA's Summ. J. Mot."), ECF No. 131; (3) Defendant Washington Metropolitan Area

Transit Authority's Supplemental Motion for Summary Judgment, ECF No. 154 ("WMATA's

Supp. Summ. J. Mot."); (4) Defendant ATU Local 689['s] Motion to Strike Plaintiff's

Objections ("Union's Mot. to Strike"), ECF No. 137; and (5) the Plaintiff's Motion to Strike and

Opposition to Defendant Local 689's Motion to Strike ("Pl.'s Mot. to Strike"), ECF No. 138.

Upon careful consideration of the parties' submissions,[2] the Court concludes that it must deny

the Union's and the plaintiff's cross-motions to strike, grant the Union's motion for summary

---

[2] In addition to the filings already identified, the Court considered the following submissions in reaching its decision: (1) the Plaintiff's Motion to Dismiss Less Than All Parties ("Pl.'s Mot. to Dismiss"), ECF No. 120; (2) Defendant ATU Local 689['s] Statement of Undisputed Material Facts ("Union's Statement"), ECF No. 130; (3) Defendant ATU Local 689['s] Memorandum in Support of Summary Judgment ("Union's Summ. J. Mem."), ECF No. 130; (4) Memorandum of Points and Authorities in Support of WMATA Defendants' Motion for Summary Judgment ("WMATA's Summ. J. Mem."), ECF No. 131-1; (5) Statement of Material Facts as to Which There is No Genuine Issue ("WMATA's Statement"), ECF No. 131-2; (6) the Plaintiff's Opposition to WMATA and Local 689 Defendants['] Motions for Summary Judgment ("Pl.'s Opp'n"), ECF No. 133; (7) Corey LeRoy Bey's Objections ("Pl.'s Objections"), ECF No. 133-1; (8) Corey LeRoy Bey's Declaration of Facts Rebutting Defendants' Material Facts as to Which There is No Genuine Issue and Memorandum Facts ("Pl.'s Decl."), ECF No. 133-2; (9) Corey LeRoy Bey's Memorandum of Points in Support of His Opposition to the WMATA Defendants['] Motion[] for Summary Judgment ("Pl.'s Opp'n to WMATA's Summ. J. Mot."), ECF No. 133-3; (10) Corey LeRoy Bey's Memorandum of Points in Support of His Opposition to Defendant ATU Local 689['s] Motion[] for Summary Judgment ("Pl.'s Opp'n to Union's Summ. J. Mot."), ECF No. 133-4; (11) WMATA Defendants' Reply to Plaintiff's Opposition to Motion for Summary Judgment ("WMATA's Summ J. Reply"), ECF No. 135; (12) Defendants' Reply Memorandum to Plaintiff's Opposition to Motion for Summary Judgment ("Union's Summ. J. Reply"), ECF No. 136; (13) Defendant Local 689['s] Memorandum in Support of Motion to Strike Objections ("Union's Mot. to Strike Mem."), ECF No. 137; (14) Corey LeRoy Bey's Memorandum in Support of His Motion to Strike and Opposition to Defendant Local 689's Motion to Strike ("Pl.'s Mot. to Strike Mem."), ECF No. 138-1; (15) Defendant Local 689['s] Memorandum in Support of Opposition to Plaintiff's Motion to Strike ("Union's Mot. to Strike Opp'n"), ECF No. 140; (16) WMATA Defendants' Opposition to Plaintiff's Motion to Strike ("WMATA's Mot. to Strike Opp'n"), ECF No. 141; (17) the Plaintiff's Response to Local 689's Memorandum in Support of Opposition [ ] ("Pl.'s Mot. to Strike Reply"), ECF No. 142; (18) Defendant Washington Metropolitan Area Transit Authority's Memorandum of Points and Authorities in Support of Its Supplemental Motion for Summary Judgment ("WMATA's Supp. Summ. J. Mem."), ECF No. 154-1; (19) Defendant Washington Metropolitan Area Transit Authority's Statement of Undisputed Material Facts in Support of Its Supplemental Motion for Summary Judgment ("WMATA's Supp. Statement"), ECF No. 154-2; (20) the Plaintiff's Declaration/Memorandum in Opposition to Defendant's Supplemental Motion for Summary Judgment ("Pl.'s Supp. Opp'n"), ECF No. 159; (21) Defendant Washington Metropolitan Area Transit Authority's Reply to Plaintiff's Opposition to Its Supplemental Motion for Summary Judgment ("WMATA's Supp. Reply."), ECF No. 162; (22) the Plaintiff's First Amended Complaint ("Bey I Compl."), Civil Action No. 12-940, ECF No. 61; (23) Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment ("WMATA's 1st Summ. J. Mem."), Civil Action No. 12-940, ECF No. 78-1; (24) Corey McFadden's Reply in Opposition to Defendants' Memorandum of Points and Authorities and Memorandum in Support of [His] Cross-Motion for Summary Judgment ("Pl.'s Opp'n to WMATA's 1st Summ. J. Mot."), Civil Action No. 12-940, ECF No. 80-1; (25) Corey McFadden's Affidavit Rebutting Statements Within John Coleman's and Lisa Cooper Lucas'[s] Affidavit ("Pl.'s Affidavit"), Civil Action No. 12-940, ECF No. 80-2; and (26) Corey McFadden's Verified Statement of Material Facts to Which There is No Genuine Issue ("Pl.'s Statement"), Civil Action No. 12-940, ECF No. 80-3.

judgment, grant in part and deny in part WMATA's motion for summary judgment, and grant in part and deny in part WMATA's supplemental motion for summary judgment.

## I.    BACKGROUND

Although a detailed procedural history, see McFadden v. Wash. Metro. Area Transit Auth., 168 F. Supp. 3d 100, 103–04 (D.D.C. 2016) (Walton, J.); McFadden v. Wash. Metro. Area Transit Auth., 949 F. Supp. 2d 214, 218–19, 225 (D.D.C. 2013) (Walton, J.), and much of the factual background, see McFadden v. Wash. Metro. Area Transit Auth., No. 14-1115 (RBW), 2015 WL 13659261, at *2–3 (D.D.C. Jan. 22, 2015) (Walton, J.), of this case have previously been set forth by the Court, the Court finds it necessary to briefly reiterate the current procedural posture of this case pertinent to the pending motions, and to discuss the plaintiff's work involving safety-related incidents and his use of the pharmaceutical, Adderall.

Considering the facts in the light most favorable to the plaintiff as the non-moving party in regards to the summary judgment motions, the record consists of the following regarding the plaintiff's involvement in safety-related incidents and his use of Adderall in his capacity as a WMATA bus mechanic. After being diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") in June 2009, Pl.'s Decl. ¶ 11, the plaintiff was prescribed Adderall to manage his symptoms, id. ¶ 13, and he reported his Adderall usage to WMATA on June 26, 2009, see WMATA's Supp. Summ. J. Mot., Exhibit ("Ex.") F (Prescription Reporting Forms). He again reported his Adderall usage to WMATA on May 21, 2010, indicating that he had started taking Adderall "last year" and was taking it on an "ongoing" basis. See id., Ex. F (Prescription Reporting Forms). After being referred to WMATA's medical department, on June 10, 2010, WMATA "informed [the plaintiff] that use of Adderall was against [United States Department of Transportation ("DOT")] policy for [commercial driver's license] holders. [The plaintiff] was

instructed that [he] must have [his] prescription switched to a non-[S]chedule II medication prior to [him] being allowed to return to duty." Pl.'s Statement ¶ 16. The plaintiff then began taking Strattera, a non-Schedule II medication. See id. ¶ 17. Thereafter, the plaintiff submitted a grievance to WMATA, challenging WMATA's directive that he stop taking Adderall, on the basis that "the DOT and WMATA did not have a regulation prohibiting the use of Adderall." Id. ¶ 19. Then, after being involved in an accident in September 2010, the plaintiff filed an accident appeal form stating that the accident "was the result of being removed from [Adderall]." Id. ¶ 21.

The plaintiff began taking Adderall again in September 2010, and submitted prescription reporting forms with WMATA on September 9, 2010; October 9, 2010; October 10, 2010; December 10, 2010; and January 18, 2011, advising WMATA that he was taking the medication. See WMATA's Supp. Summ. J. Mot., Ex. F (Prescription Reporting Forms). The Accident Appeal Board denied the plaintiff's accident appeal on January 18, 2011, and the following day, the plaintiff represents that defendant Lisa Cooper-Lucas, the head of WMATA's medical branch, "informed [him] that [he] would not be allowed to continue taking Adderall based on a DOT prohibition," and that he "was removed from duty pending having [his] prescription changed, evaluated[,] and approved for use by [ ] Cooper-Lucas." Pl.'s Statement ¶ 31. The plaintiff informed Cooper-Lucas that he "would take Adderall for the last time [on] [ ] January 23, 2011," id. ¶ 32, and Cooper-Lucas informed the plaintiff that "Adderall would be undetectable in his system [twenty-four] hours after [he] last took it" and that "she would clear . . . [his] return to duty on . . . January 24[, 2011]," id. ¶ 33. According to the plaintiff, Cooper-Lucas "threatened [him] with a [thirty-]day suspension if [he] were to test positive for Adderall at any point in the future." Id.

Following his return to work, the plaintiff suffered an on-the-job injury on January 25, 2011, and after receiving medical treatment, was "transported to WMATA headquarters for a post[-]incident drug and alcohol urinalysis," and tested positive for the use of Adderall. Id. ¶¶ 37–38. The following morning, Cooper-Lucas suspended the plaintiff for thirty days, and on February 3, 2011, the plaintiff was released from pay status, required to enroll in the WMATA's Employee Assistance Program, and threatened with "termination for violating the prescription drug section of WMATA's [s]ubstance abuse [p]olicy." Id. ¶ 49. The plaintiff contends that he was "removed from the Category II [Employee Assistance] [P]rogram for 'intent' to use [Adderall]," after he requested that WMATA "put an answer in writing stating whether or not [he] would be allowed to take [his] doctor prescribed medication," i.e., Adderall. Pl.'s Decl. ¶ 25. Thereafter, on February 28, 2011, the plaintiff represents that he was removed from the Employee Assistance Program on the ground that he "ha[d] been non-compliant with [his] Category II Contract stipulation." Pl.'s Opp'n, Ex. 60 (Employee Assistance Program Removal Letter).

As a result of the plaintiff's removal from the Employee Assistance Program, id., Ex. 60 (Employee Assistance Program Removal Letter), WMATA convened a Joint Labor Management Committee (the "Committee") meeting on March 15, 2011, and the Committee voted to terminate the plaintiff, see WMATA's Summ. J. Mot, Ex. B (Committee Transcript) at 72:19–22. The plaintiff challenged his termination, and the Union reached a settlement with WMATA on the plaintiff's behalf on September 29, 2011, resulting in the plaintiff being reinstated to his position as a bus mechanic, see Pl.'s Opp'n, Ex. 233 (Sept. 29, 2011 Settlement Agreement), and the plaintiff returned to work on November 6, 2011, see WMATA's Supp. Summ. J. Mot., Ex. C

(Deposition of Corey L. McFadden (June 13, 2014) ("McFadden June 13, 2014 Dep.")) at 215:13–21.

Although the settlement agreement did not address the plaintiff's Adderall use, see Pl.'s Opp'n, Ex. 233 (Sept. 29, 2011 Settlement Agreement), WMATA unofficially granted the plaintiff's request to use Adderall[3] by allowing him to report his Adderall usage to WMATA upon his return to duty, see WMATA's Supp. Summ. J. Mot., Ex. F (Prescription Reporting Forms) (showing that the plaintiff reported his Adderall usage to WMATA on October 17, 2011; November 11, 2011; November 23, 2011; December 22, 2011; March 24, 2012; and April 24, 2012).

On April 3, 2012, while taking Adderall, the plaintiff left a bus running unattended for an extended period of time and he testified during his deposition that he "forgot the bus was back [where it was discovered running]." See id., Ex. C (McFadden June 13, 2014 Dep.) at 231:14–15; see also id., Ex. C (McFadden June 13, 2014 Dep.) at 230:20–231:14.[4] On February 1, 2012,

---

[3] WMATA contends that the "DOT/[Federal Transit Administration ("FTA")] previously granted [the plaintiff] a medical waiver that permitted [him] to continue using prescribed, Schedule II controlled medication, as directed, [which was] intended to assist [him] with improving [his] effectiveness as a Mechanic." Pl.'s Opp'n, Ex. 172 (Accommodation Request Denial). The plaintiff disputes that a waiver was issued, stating in his appeal that "[a] federal waiver was not given nor [was] one required." Id., Ex. 177 (Accommodation Request Appeal). The record does not indicate that a formal waiver was ever issued. The Court presumes that WMATA was referring to 49 C.F.R. § 382.213, which states that drivers who perform safety-sensitive functions may use non-Schedule I drugs "when the use is pursuant to the instructions of a licensed medical practitioner, as defined in [49 C.F.R.] § 382.107, who is familiar with the driver's medical history and has advised the driver that the substance will not adversely affect the driver's ability to safely operate a commercial vehicle." 49 C.F.R. § 382.213(b)(2) (2012).

[4] The plaintiff now claims that he did not leave the bus running, and that "Kelvin Rufus, the evening shift lead man[,] restarted the bus once [the plaintiff] left the pressure washing area." Pl.'s Decl. ¶ 41. The Court, however, will not lend credence to the plaintiff's unsupported later-in-time statement, particularly when he has not submitted any explanation for the recent correction. See Pyramid Secs. Ltd. v. IB Resolution, Inc., 924 F.2d 1114, 1123 (D.C. Cir. 1991) ("Courts have long held that a party may not create a material issue of fact simply by contradicting [his] prior sworn testimony. [T]he objectives of summary judgment would be seriously impaired if the district court were not free to disregard [the later testimony] . . . . [T]he prior sworn statement will receive controlling weight unless the shifting party can offer persuasive reasons for believing the supposed correction." (second and third alterations in original) (citations and internal quotation marks omitted)); see also Reetz v. Jackson, 176 F.R.D. 412, 414 (D.D.C. 1997) ("If a party who has been examined at length in deposition could raise an issue of fact simply by submitting an affidavit contradicting [his] own prior testimony, this would greatly diminish the utility of summary

(continued . . . )

6

the plaintiff filed a request for accommodations by WMATA, seeking permission "to be waived from reporting" his Adderall usage to WMATA, and for "greater time to complete [his job-related] task[s]." Pl.'s Opp'n, Ex. 137 (Accommodation Request). WMATA denied the plaintiff's accommodation requests, advising him that "the ADA Panel has found [him] to be a direct threat in [his] current position, defined as a significant risk or substantial harm to [his] health and/or safety or others that cannot be eliminated or reduced by reasonable accommodation." Id., Ex. 172 (Accommodation Request Denial) at 2. WMATA noted that its determination that the plaintiff posed a direct threat was "based on documented history of preventable incidents and safety infractions," which included:

(1) Physically leaving a bus running and unattended for several hours parked in an alley in a residential neighborhood;

(2) Repeated recklessness and excessive speeding while operating a forklift in the garage environment. ([The plaintiff] ha[s] been observed and estimated to exceed 10 MPH while driving the forklift to the point it "bounces" off the ground); and

(3) Three instances of leaving the fuel nozzle locked on the bus and driving away while the nozzle is still attached.

Id., Ex. 172 (Accommodation Request Denial) at 2. In making its direct threat determination, the ADA Panel considered testimony regarding these alleged incidents. Id., Ex. 178 (Accommodation Request Appeal Denial) at 2. The plaintiff was medically disqualified as a bus mechanic that same day and placed into the "Section 124 job placement program" for medically disqualified employees. Id., Ex. 168 (Medical Disqualification Letter). The plaintiff then

---

( . . . continued)
judgment as a procedure for screening out sham issues of a fact. [A] party's affidavit which contradicts [his] own prior deposition testimony should be disregarded on a motion for summary judgment." (second alteration in original) (citations and internal quotation marks omitted)).

obtained a non-safety sensitive station manager position with WMATA in March 2013.

WMATA's Summ. J. Mot., Ex. A (Oct. 29, 2013 Arbitration Award) at 7–8.

The plaintiff initially brought Civil Action No. 12-940 (Bey I) against WMATA and three WMATA employees, asserting claims for disability discrimination, retaliation, defamation, and civil conspiracy. See Bey I Compl. ¶¶ 175–243. The plaintiff later filed his second civil suit, Civil Action No. 14-1115 (Bey II), against defendants WMATA, the same three WMATA employees named in Bey I, four additional WMATA employees, two other individuals, and the Union, asserting violations of the Rehabilitation Act; the Americans with Disabilities Act; the Labor Management Relations Act; and common law claims for defamation, intentional infliction of emotional distress, and civil conspiracy. See Bey II Compl. ¶¶ 13–23. After WMATA moved for summary judgment in Bey I, the Court entered judgment for WMATA on some of the plaintiff's claims, but allowed the plaintiff's disability discrimination and retaliation claims against WMATA to proceed. See Order (Sept. 2, 2016), Bey I, ECF No. 95. The Court later consolidated Bey I and Bey II. See Order at 1 (Dec. 20, 2016), ECF No. 117.

In the now consolidated case, WMATA has filed a motion for summary judgment on the disability discrimination, retaliation, and hostile work environment claims asserted against WMATA and the defamation and civil conspiracy against the individual WMATA defendants in the Bey II Complaint, see WMATA's Summ. J. Mot. at 2, and subsequently filed a supplemental motion for summary judgment on the disability discrimination and retaliation claims asserted against WMATA in the Bey I and Bey II Complaints, see WMATA's Supp. Summ. J. Mot. at 1. The Union has filed a motion for summary judgment on the breach of duty of fair representation, civil conspiracy, and retaliation claims against the Union, see Union's Summ. J. Mem. at 8–24, as well as a motion to strike the plaintiff's objections filed in support of his opposition to the

WMATA's and the Union's motions for summary judgment, see Union's Mot. to Strike at 1. The plaintiff then filed a cross-motion to strike the deposition transcripts submitted as exhibits with the Union's motion for summary judgment. See Pl.'s Mot. to Strike Mem. at 6. These are the motions that are the subject of this Memorandum Opinion.

## II.     STANDARDS OF REVIEW

### A.  Motion to Strike

A court, either on its own volition or at the request of a moving party, may strike from a pleading any "insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). A motion to strike is a "'drastic remed[y] that courts disfavor,'" and trial judges have discretion to either grant or deny such motion. Riddick v. Holland, 134 F. Supp. 3d 281, 285 (D.D.C. 2015) (quoting United States ex rel. Landis v. Tailwind Sports Corp., 308 F.R.D. 1, 4 (D.D.C. 2015)). Rule 12(f) itself does not require the striking of prejudicial matters, and although courts disfavor motions to strike, courts have granted such motions upon a showing that parts of a pleading were prejudicial or scandalous. Therefore, "absent a 'strong reason for so doing,' courts will generally 'not tamper with pleadings.'" Nwachukwu v. Rooney, 362 F. Supp. 2d 183, 190 (D.D.C. 2005) (quoting Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir. 1976)).

### B.  Motion for Summary Judgment

A court will grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Steele v. Schafer, 535 F.3d

689, 692 (D.C. Cir. 2008) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).

In considering a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Anderson</u>, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ." <u>Id.</u> The movant has the burden of demonstrating the absence of a genuine issue of material fact and that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

In responding to a summary judgment motion, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986) (citing cases). Accordingly, the non-moving party must not rely on "mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there [are] genuine issue[s] for trial." <u>Anderson</u>, 477 U.S. at 248 (first alteration in original) (quoting <u>First Nat'l Bank of Ariz. v. Cities Serv. Co.</u>, 391 U.S. 253, 288 (1968)). Thus, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position [is] insufficient" to withstand a motion for summary judgment, as "there must be [some] evidence on which the jury could reasonably find for the [non-movant]." <u>Id.</u> at 252. Finally, courts must liberally construe a <u>pro se</u> plaintiff's summary judgment submissions, affording him "the benefit of the doubt," and "ignor[ing] some technical shortcomings of [his] filings." <u>Sindram v. Kelly</u>, Civil Action No. 06-1952 (RBW), 2008 WL 3523161, at *3 (D.D.C. Aug. 13, 2008) (Walton, J.) (quoting <u>Voinche v. FBI</u>, 412 F. Supp. 2d 60, 70 (D.D.C. 2006)); <u>see also</u> <u>Richardson v. United States</u>, 193 F.3d 545, 548 (D.C. Cir. 1999).

### III.  ANALYSIS

#### A. The Union's and the Plaintiff's Cross-Motions to Strike

The Union requests that the Court strike the plaintiff's objections filed in support of his opposition to WMATA's and the Union's motions for summary judgment.  See Union's Mot. to Strike at 1.  In his objections, the plaintiff claims that the transcript of his March 4, 2017 deposition and his interrogatory responses, both which the Union submitted in support of its motion for summary judgment, "appear to have been altered."  Pl.'s Objections at 1.[5] Additionally, the plaintiff objects to the court reporter's affidavit accompanying the plaintiff's deposition transcript because "it is not notarized or signed in front of her attorney/officer of the Court."  Id.

The Union argues that the plaintiff's objections should be stricken because his claims are "inherently false," "libelous," and "highly prejudicial to [the] [d]efendants."  Union's Mot. to Strike Mem. at 3.  Accompanying its motion to strike, the Union submitted the full-page version of the plaintiff's deposition transcript,[6] which included the court reporter's oath, signature, and notary number, noting that "[a]ll of the testimony is identical in both."  See Union's Mot. to Strike at 6; id., Ex. A (Deposition of Corey L. McFadden (Mar. 4, 2017) ("McFadden Mar. 4, 2017 Dep.")).  The plaintiff concedes that due to time constraints, he "avoid[ed] a complete reading of the transcripts" and did not perform a line-by-line comparison of the mini-script and full-page versions of the transcript.  Pl.'s Mot. to Strike Mem. at 5.  Instead, he merely "look[ed]

---

[5] Because the plaintiff does not include page numbers on any of his filings, the Court will use the ECF-generated page numbers when citing to those submissions.

[6] Rather than submitting the plaintiff's March 4, 2017 deposition transcript in standard full page format, the Union originally submitted the transcript in "mini-script" format, with four pages condensed onto each page, as an exhibit with its motion for summary judgment.  See Union's Summ. J. Mem., Ex. A (McFadden Mar. 4, 2017 Dep.).

for different fonts and different sizes," id. at 6, and therefore "cannot say whether the words are identical because [he] did not read either transcript," Pl.'s Mot. to Strike Reply at 4.

In his cross-motion to strike, the plaintiff requests that the Court strike both versions of the plaintiff's deposition transcript from the record because "[t]o consider the transcripts would be highly prejudicial against [him]" and improper. Pl.'s Mot. to Strike Mem. at 6. The plaintiff first contends that his "opposition and attached filings are not 'pleadings' as described in Rule 12" and thus cannot be stricken under Rule 12. See id. at 3. The plaintiff next contends that the Union's attorney has not made a sufficient showing of prejudice and harm to his reputation because the plaintiff merely alleged that the transcript "appeared" to have been altered and did not identify "the potential wrongdoer." Id. at 5. The Union responds that a motion to strike is proper because it was "the only possible avenue . . . to strike these libelous contentions," and that its attorney sufficiently showed prejudice because "by filing documents on behalf of his client, he has taken on the responsibility to uphold the laws and ethical rules which govern the [C]ourt," and that the objections "are baseless allegations [that] could be potentially harmful to the reputation of counsel." Union's Opp'n to Pl.'s Mot. to Strike at 3–4.

The Court first concludes that the Union has not met its burden to warrant granting its motion to strike. Rule 12(f) authorizes only the striking of pleadings. See Fed. R. Civ. P. 12(f) (stating that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" (emphasis added)); see also Fed. R. Civ. P. 7(a) (defining pleadings as "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer"). The plaintiff's submission that the Union seeks to strike does not fall under Rule

7(a)'s definition of a "pleading," because it was filed in support of the plaintiff's opposition to WMATA's and the Union's motions for summary judgment, which is not the type of document identified in the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 7(a), 12(f). Therefore, for that reason alone, the Court must deny the Union's motion to strike.[7] See id.

The Court also concludes that the plaintiff has not met his burden on his cross-motion to strike. Like the plaintiff's objections filed in support of his opposition to WMATA's and the Union's motions for summary judgment, the deposition transcripts and interrogatory responses submitted in conjunction with the Union's motion for summary judgment are not "pleadings" that can be stricken under Rule 12, and therefore the Court must also deny the plaintiff's cross-motion to strike.[8]

Accordingly, the Court must deny both the Union's and the plaintiff's cross-motions to strike.

## B. WMATA's Motions for Summary Judgment

### 1. The Plaintiff's Rehabilitation Act Claims Against WMATA

WMATA moves for summary judgment on the plaintiff's disability discrimination and retaliation claims under the Rehabilitation Act on the ground that the plaintiff failed to establish

---

[7] The Court, however, cautions the plaintiff not to make further accusations of untruthfulness. Although the plaintiff is not an attorney and is thus not subject to the ethical standards to which attorneys are bound, "[l]aunching allegations of [misconduct] without reasonable inquiry as to their truth is unprofessional and unethical behavior, not to mention offensive and damaging to reputable attorneys." See Nat'l Viatical, Inc. v. Univ. Settlements Int'l, Inc., Civil Action No. 11-1226, 2012 WL 3704773, at *1 (W.D. Mich. Aug. 27, 2012) (citation and internal quotation marks omitted). The Court will not condone such conduct in the future by the plaintiff because even though he is not an attorney, he has now been advised that such behavior is inappropriate and will not be tolerated.

[8] The Court observes that the plaintiff does not appear to grasp the reciprocal application of Rule 12 because he opposes the Union's motion to strike his objections in part on the ground that the objections filed in support of his opposition to the Union's motion for summary judgment are not a pleading, see Pl.'s Mot. to Strike Mem. at 3, while seeking to have stricken his deposition transcripts and interrogatory responses, which are also not pleadings.

a prima facie case for both sets of claims.  See WMATA's Supp. Summ. J. Mem. at 8–20.  The

Court will address each argument in turn.[9]

### a. The Plaintiff's Disability Discrimination Claims

The plaintiff brings separate disability discrimination claims against WMATA pursuant

to the Rehabilitation Act in both of the consolidated cases, claiming that WMATA failed to

provide him with reasonable accommodations for his disability.  See Bey I Compl. ¶¶ 175–92;

Bey II Compl. ¶¶ 122–41.  In Bey I, the plaintiff alleges that he was denied a reasonable

accommodation because WMATA did not permit him to use Adderall while employed as a bus

mechanic, see Bey I Compl. ¶¶ 35–41, 59, 72–79, 182, 188, while in Bey II, he alleges that he

was denied reasonable accommodations because WMATA did not waive its prescription drug

reporting requirement for the plaintiff or provide him with extra time to complete assignments,

see Bey II Compl. ¶¶ 47, 131.

To survive summary judgment, a plaintiff must establish a prima facie case of

discrimination under the Rehabilitation Act for failure to provide reasonable accommodations by

producing

> sufficient evidence to allow a reasonable jury to conclude that (i) []he was
> disabled within the meaning of the Rehabilitation Act; (ii) h[is] employer had

---

[9] In its supplemental motion for summary judgment, WMATA contends that the plaintiff has waived his right to
assert his Rehabilitation Act claims because the Union, on his behalf, and WMATA executed settlement agreements
resolving the plaintiff's grievances "concerning his Adderall/Vyvanse use, his request for more time to perform his
job, his request to deviate from the prescription reporting requirement and his medical disqualification as a
mechanic."  WMATA's Supp. Summ. J. Mem. at 21.  The Court disagrees.  As the Supreme Court has concluded,
"federal antidiscrimination rights may not be prospectively waived."  14 Penn Plaza LLC v. Pyett, 556 U.S. 247,
265 (2009).  However, an agreement "by way of arbitration instead of litigation . . . waives [ ] the right to seek relief
from a court in the first instance."  Id. at 265–66.  In this case, WMATA has not cited any language from the
collective bargaining agreement or the settlement agreements demonstrating that the plaintiff agreed to resolve his
statutory discrimination claims through arbitration.  In fact, unlike the settlement agreement in Wallin v. Minnesota
Department of Corrections, 974 F. Supp. 1234, 1238 (D. Minn. 1997), the case principally relied on byWMATA as
support for its position, the settlement agreement in this case does not explicitly waive statutory claims.  Compare
WMATA's Supp. Summ. J. Mot., Ex. O (Sept. 29, 2011 Settlement Agreement), with Wallin, 974 F. Supp. at 1237
(noting the release of claims based on statutory law).  Accordingly, the Court rejects WMATA's argument that the
plaintiff waived his right to assert his Rehabilitation Act claims in this case.

notice of h[is] disability; (iii) []he was able to perform the essential functions of h[is] job with or without reasonable accommodation; and (iv) h[is] employer denied h[is] request for a reasonable accommodation of that disability.

Soloman v. Vilsack, 763 F.3d 1, 9 (D.C. Cir. 2014).

WMATA does not contest that the plaintiff has established the first two elements of his prima facie case for his failure to accommodate claims. See WMATA's Supp. Summ. J. Mem. at 8. However, WMATA takes issue with the third element of the plaintiff's prima facie case, arguing that the plaintiff is not a qualified individual with a disability who with or without accommodations could perform the essential functions of the bus mechanic position. See id. at 8–14. WMATA also takes issue with the fourth element of the plaintiff's prima facie case, arguing that the plaintiff's requested accommodations were not reasonable, see id. at 16–18, and that WMATA provided a reasonable accommodation to the plaintiff by reassigning him to the non-safety-sensitive position of station manager, see id. at 14–16.

WMATA first argues that the plaintiff is not "qualified" to perform the job of bus mechanic because he is a "direct threat" to himself, his colleagues, and the public due to the symptoms of his disability; namely, "his inattentiveness, forgetfulness, making improper judgments[,] and being unable to complete assignments within a reasonable time." Id. at 13. WMATA claims that the plaintiff is "unable to perform the essential functions of the [bus] mechanic position without the use of Adderall," and that the "[p]laintiff's performance declined even with the use of Adderall." Id. at 11. The plaintiff, on the other hand, argues that he "could perform the essential functions of a [b]us [m]echanic with similar times as the other people employed in the same position." Pl.'s Supp. Opp'n at 6.

If an individual with a disability can perform the essential functions of his position with reasonable accommodations, he is deemed to be "qualified." See Graffius v. Shinseki, 672 F.

Supp. 2d 119, 126 (D.D.C. 2009) (citing Carr v. Reno, 23 F.3d 525 (D.C. Cir. 1994)). "An

accommodation is 'reasonable' if it allows the employee to fulfill all essential functions of h[is]

job without imposing an undue hardship on the employer." Id. (citing 29 C.F.R.

§ 1614.203(c)(1) (2001)). The employee bears the burden of identifying a reasonable

accommodation, while the employer bears the burden of proving undue hardship. Id. However,

"[a]n employer may escape liability under the Rehabilitation Act if it can establish that the

employee poses a direct threat to himself or others." Clayborne v. Potter, 448 F. Supp. 2d 185,

190 (D.D.C. 2006) (citation and internal quotation marks omitted). A "direct threat" is defined

as "a significant risk to the health or safety of others that cannot be eliminated by reasonable

accommodation." 42 U.S.C. § 12111(3).

Based on the record, a genuine dispute of material fact exists as to whether the

plaintiff, with the use of Adderall, could perform the essential functions of his position as

a bus mechanic for WMATA, and is therefore a qualified individual pursuant to the

Rehabilitation Act. First, WMATA does not submit any evidence regarding the

plaintiff's "repeated recklessness and excessive speeding while operating a forklift in the

garage environment." Pl.'s Opp'n, Ex. 172 (Accommodation Request Denial) at 2. In its

response to the plaintiff's medical disqualification appeal, WMATA claimed that its

knowledge of the speeding was based on testimony before the ADA Panel, see id., Ex.

178 (Accommodation Request Appeal Denial); however, WMATA has not submitted any

evidence, in the form of safety reports, affidavits, or ADA Panel transcripts, regarding

these alleged instances of speeding. It is therefore unclear when these alleged instances

occurred, if at all, and the Court is unable to make a determination, based on the evidence

in the record, whether these events actually occurred and whether the plaintiff was

actively using Adderall when they allegedly occurred. Second, WMATA has conceded that the three instances when the plaintiff moved a bus without first detaching the fuel nozzle occurred while the plaintiff was not using Adderall. See WMATA's Supp. Summ. J. Mem. at 3–4. Therefore, the only evidence that WMATA offers to prove that the plaintiff was unqualified is <u>one</u> instance when he left a bus running and unattended while he was using Adderall. See WMATA's Supp. Summ. J. Mot, Ex. C (McFadden June 13, 2014 Dep.) at 230:20–231:14. The Court is not inclined to make a direct threat determination based on a single instance of purportedly dangerous behavior. See <u>Dark v. Curry Cty.</u>, 451 F.3d 1078, 1088, 1091 (9th Cir. 2006) (finding that "there remains a genuine issue of material fact as to whether [the employee] was qualified with reasonable accommodation" when he suffered only one on-the-job epileptic episode); cf. <u>Wurzel v. Whirlpool Corp.</u>, 482 F. App'x 1, 15 (6th Cir. 2012) (finding that the employee was a direct threat when "numerous times he had required the assistance of a fellow employee to get him to the [employee health center] in a medical emergency"); <u>Clayborne v. Potter</u>, 448 F. Supp. 2d 185, 191 (D.D.C. 2006) (finding that the plaintiff "was a direct and substantial threat to her own safety as demonstrated by her repeated workplace accidents"). Because for summary judgment purposes WMATA has not offered sufficient evidence that the plaintiff's ADHD posed "a significant risk to the health or safety of others that cannot be eliminated by [the use of Adderall]," <u>see</u> 42 U.S.C. § 12111(3), there exists a genuine issue of material fact as to the plaintiff's ability to perform the essential functions of the bus mechanic position.

However, in order to succeed on his disability discrimination claim under the Rehabilitation Act, the plaintiff must also prove that WMATA failed to provide him with a

reasonable accommodation or accommodations.  See Soloman, 763 F.3d at 9; see also Ward v. McDonald, 762 F.3d 24, 31 (D.C. Cir. 2014) (explaining that to prevail on a failure to accommodate claim, an employee "bears the burden of proving the[] elements [of the claim] by a preponderance of the evidence" (emphasis added)).  The plaintiff requested three accommodations for his disability.  The Court will address each in turn.

### i.  Use of Adderall

The plaintiff argues that WMATA denied his request for a reasonable accommodation by preventing him from taking Adderall while employed as a bus mechanic.  See Bey I Compl. ¶¶ 35–41, 59, 72–79, 182, 188.  Although the plaintiff did not submit a formal request for an accommodation to WMATA to take Adderall to manage the symptoms of his ADHD, the record shows that he did informally request this accommodation on numerous occasions.  See supra at 4–5 (noting that the plaintiff submitted a grievance challenging the WMATA's directive that he stop taking Adderall, filed an accident appeal stating that the accident was caused by him not being allowed to take Adderall, and requested in writing whether he would be allowed to take Adderall).  Although WMATA initially denied the plaintiff's request, and he subsequently suffered an adverse employment action, see id. (discussing the circumstances that led to the plaintiff's termination), the plaintiff was ultimately reinstated to his position and was thereafter allowed to take Adderall while employed as a bus mechanic to manage his disability, see supra at 5–6.  Therefore, the plaintiff has failed to demonstrate that WMATA denied his request to take Adderall, and his failure to accommodate claim regarding his request to use Adderall fails.  See Stewart v. White, 118 F. Supp. 3d 321, 325 (2015) ("'[T]o create an issue for the jury[,]' [the] plaintiff must point to 'sufficient evidence' in the record showing that []he requested an accommodation and 'that, after the request, [the defendant] refused to make an accommodation."

(quoting <u>Stewart v. St. Elizabeth's Hosp.</u>, 589 F.3d 1305, 1308 (D.C. Cir. 2010) (second alteration in original))).  Accordingly, the Court grants WMATA's motion for summary judgment on Count I of the plaintiff's <u>Bey I</u> Complaint regarding WMATA's alleged failure to permit him to use Adderall.[10]

### ii.  Waiver of the Prescription Drug Reporting Requirement

The plaintiff also contends that WMATA denied him a reasonable accommodation by denying his request to waive the prescription drug reporting requirement.  <u>See</u> <u>Bey II</u> Compl. ¶¶ 47, 131.  On February 1, 2012, the plaintiff submitted a formal request for accommodations with WMATA, seeking to have his current dosage of Adderall added to his medical file to document that he would test positive for the use of amphetamines and a waiver from having to report his use of Adderall to WMATA, unless the current dosage changed.  <u>See</u> Pl.'s Opp'n, Ex. 137 (Accommodation Request).  WMATA denied the plaintiff's request to add his current dosage to his medical file and for a waiver of the prescription reporting requirement, explaining that pursuant to 49 C.F.R. §§ 40 and 655, "safety sensitive employees are required to report prescribed medications every [thirty] days [ ] [and] [WMATA] does not have authority to waive this requirement."  <u>Id.</u>, Ex. 172 (Accommodation Request Denial).   However, in response to the plaintiff's appeal of the denial, WMATA conceded that "the Code of Federal Regulations, as applicable in this case, does not specifically require that prescribed medication usage by employees in a safety sensitive position be reported to employers . . . [, but that] the Department of Transportation and the Federal Transit Administration . . . allow employers, in establishing local policy, to direct employees to report prescription and over the counter medication usage."

---

[10] Although the plaintiff's failure to accommodate claim regarding his use of Adderall fails because WMATA ultimately allowed him to use it while employed as a bus mechanic, the facts surrounding WMATA's initial refusal to allow the plaintiff to take Adderall are still pertinent to the plaintiff's retaliation claim.  <u>See</u> <u>infra</u> Part III.B.1.b.

Id., Ex. 178 (Accommodation Request Appeal Denial). WMATA added that "Metro Policy Instruction 7.21/4, Drug and Alcohol Policy and Testing Program provides that covered employees who use prescription drugs and over the counter medications shall report the same every [thirty] days if they continue to use the medication." Id., Ex. 178 (Accommodation Request Appeal Denial).

"[A]ccommodations are reasonable if they allow the employee to perform the essential functions of the job without imposing undue hardship on the employer." Norden v. Samper, 503 F. Supp. 2d 130, 145 (D.D.C. 2007) (citing Chinchillo v. Powell, 236 F. Supp. 2d 18, 23 (D.D.C. 2003)). "[T]he Supreme Court [has] stated that when confronting a defendant's motion for summary judgment on the grounds that [the] plaintiff's requested accommodation is not reasonable, the plaintiff's burden is only to show that the requested accommodation is 'reasonable on its face, i.e., ordinarily or in the run of cases.'" Graffius, 672 F. Supp. 2d at 129 (emphasis removed) (quoting U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 401 (2002)). "[T]he plaintiff must show, as part of h[is] burden of persuasion, that an effective accommodation exists that would render h[im] otherwise qualified." Borkowski v. Valley Cent. School. Dist., 63 F.3d 131, 139 (2d Cir. 1995). And, "when an employee seeks a workplace accommodation, the 'accommodation must be related to the limitation that rendered the person disabled.'" Adams v. Rice, 531 F.3d 936, 944 (D.C. Cir. 2008) (quoting Nuzum v. Ozark Auto. Distribs., Inc., 432 F.3d 839, 848 (8th Cir. 2005)).

The plaintiff explains that he sought a waiver from reporting his use of Adderall because "[t]he settlement agreement which reinstated his employment allowed a [thirty-]day suspension to remain on his record for not reporting his prescription as required by WMATA prescription reporting policy" and that "a second violation for not reporting a prescription would have been

grounds for [his] immediate termination." Bey II Compl. ¶ 47. However, he has not demonstrated how the prescription reporting requirement interfered with his ability to perform the "essential functions" of his job as a bus mechanic, such as, "maintenance and repair of WMATA vehicles and equipment," Bey II Compl. ¶ 25(b); see also WMATA's Supp. Summ. J. Mot., Ex. B (Mechanic Job Description), nor how a waiver would "allow [him] to perform the essential functions of [his] job," when he otherwise could not, see Norden, 503 F. Supp. 2d at 145. A waiver of the prescription drug reporting requirement merely to avoid potential suspension or termination for noncompliance—unlike requests to take prescription medication to manage the symptoms of a disability, see supra Part III.B.1.a.i., or seeking additional time to perform work assignments to compensate for symptoms of a disability, see infra Part III.B.1.a.iii.—is therefore not "'related to the limitation that rendered [him] disabled,'" see Adams, 531 F.3d at 944 (quoting Nuzum, 432 F.3d at 848). Moreover, the prescription reporting requirement was in compliance with a federal regulation, which permits employers to require drivers to report their prescription usage. See 49 C.F.R. § 382.213(e) (2012) ("An employer may require a driver to inform the employer of any therapeutic drug use."). Thus, the plaintiff has not met his burden of proving that the requested accommodation of not having to report his Adderall use is "reasonable" on its face, and he therefore cannot establish a prima facie case of discrimination under the Rehabilitation Act. See Soloman, 763 F.3d at 9. Accordingly, the Court grants the WMATA's motion for summary judgment on Counts I through IV of the Bey II Complaint with respect to the plaintiff's request for a waiver of the prescription drug reporting requirement.

### iii.  Additional Time to Complete Assignments

The plaintiff further argues that WMATA denied him a reasonable accommodation by refusing his request for additional time to complete assignments.  See Bey II Compl. ¶¶ 47, 131. In his February 1, 2012 accommodation request, the plaintiff sought "greater time to complete task[s]," and on May 23, 2012, WMATA denied this request, stating that it was "deferring this request as the ADA Panel has found [the plaintiff] to be a direct [safety] threat [to himself and others] in [his] current position."  Pl.'s Opp'n, Ex. 172 (Accommodation Request Denial).[11]

As noted earlier, to demonstrate that a requested accommodation was reasonable, the "plaintiff must show, as part of h[is] burden of persuasion, that an effective accommodation exists that would render h[im] otherwise qualified," and "bears only the burden of identifying an accommodation, the costs of which, facially, do not clearly exceed its benefits."  Borkowski, 63 F.3d at 139.  "If the plaintiff establishes a prima facie case of failure to provide reasonable accommodation, then it is up to the employer to demonstrate that the accommodation would have imposed an undue burden on its business; the ultimate burden, however, remains with the plaintiff."  Bonnette v. Shinseki, 907 F. Supp. 2d 54, 77 (D.D.C. 2012).

The Court concludes that the plaintiff's requested accommodation for greater time to complete his assignments is, on its face, reasonable.  The plaintiff alleges that his ADHD "affects his ability to initiate and complete tasks in a timely manner."  Bey II Compl. ¶ 26.  In his

---

[11] Although WMATA formally denied the plaintiff's request in a letter dated May 23, 2012, in a subsequent letter to the plaintiff addressing his accommodation requests appeal, WMATA stated that "the Panel did provide an accommodation, requiring [the plaintiff's] supervisors to supply written assignments at the beginning of each shift that include[d] a specific timeline by which [the plaintiff] would be required to complete assignments" and that the plaintiff "was given the latitude to advise [his] supervisor should circumstances exist that would prevent [him] from completing assigned tasks."  Pl.'s Opp'n, Ex. 178 (Accommodation Request Appeal Denial).  In the absence of other evidence in the record regarding this purported accommodation, the Court presumes that the plaintiff's request for additional time to complete his assignments was not granted.  See Chambers of U.S. Dep't of Interior, 568 F.3d 998, 1003 (D.C. Cir. 2009) ("'At summary judgment, 'all inferences must be viewed in a light most favorable to the non-moving party.'" (quoting McCready v. Nicholson, 465 F.3d 1, 7 (D.C. Cir. 2006)).

February 1, 2012 request for the accommodation of additional time to complete his work assignments, the plaintiff added that "[w]hen [he] rush[es] [he] tend[s] to make more mistakes [because] of this disab[ility]."  Pl.'s Opp'n, Ex. 137 (Accommodation Request).  Thus, a request for additional time is "'related to the limitation that rendered the person disabled,'" see Adams, 531 F.3d at 944 (quoting Nuzum, 432 F.3d at 848), and the Court concludes that the plaintiff has met his burden as to this requested accommodation.  Therefore, WMATA must demonstrate that providing additional time to the plaintiff would impose an undue burden on its operations.

Relying on Milton v. Scrivner, Inc., 53 F.3d 1118 (10th Cir. 1995), and Soto-Ocasio v. Federal Express Corp., 150 F.3d 14 (1st Cir. 1998), WMATA argues that it was not obligated to provide additional time to the plaintiff because the "[p]laintiff's request for additional time to complete his assignments is [ ] not considered a 'reasonable' accommodation  as a matter of law."  WMATA's Supp. Summ. J. Mem. at 17.  However, WMATA's reliance on these cases is misplaced.  As the First Circuit observed in Soto-Ocasio, a "'reasonable accommodation' may include . . . job restructuring, part-time or modified work schedules."  150 F.3d at 20 (quoting 42 U.S.C. § 12111(9)(B)).  Although the courts in both Milton and Soto-Ocasio concluded that the employees' requests for additional time were not reasonable, those holdings turned on the fact that the employees' work was "time-sensitive."  See id. ("The time-sensitive nature of plaintiff's work meant that if plaintiff could not enter all of the data, the company would have had to allocate other employees to complete the work."); Milton, 53 F.3d at 1124 ("Performing the selector job with speed and quality was viewed by [the employer's] management as essential, and the policy was applied to all selectors.").  Here, WMATA has offered no evidence that speed is an essential element of the bus mechanic job, and the bus mechanic job description says nothing about the speed at which the bus mechanic must perform his duties, nor does WMATA

allege that speed is an essential element of the job.  See WMATA's Supp. Summ. J. Mot., Ex. B

(Mechanic Job Description); see generally WMATA's Supp. Summ. J. Mem. at 17–18.

Therefore, the Court concludes that WMATA has not demonstrated that providing additional

time to the plaintiff was unreasonable, and that the plaintiff has established a prima facie case of

discrimination on this claim.  The Court must therefore deny WMATA's motion for summary

judgment on Counts I through IV of the Bey II Complaint regarding the plaintiff's request for

additional time to complete assignments.

### b.  The Plaintiff's Retaliation Claims Against WMATA

The plaintiff alleges that WMATA retaliated against him in violation of the

Rehabilitation Act and the Americans with Disabilities Act, after he filed two charges of

discrimination against WMATA with the Equal Employment Opportunity Commission

("EEOC") in January 2011 and October 2012 and filed a lawsuit against WMATA in this Court.

See Bey II Compl. ¶¶ 142–51. The plaintiff also filed a retaliation claim against WMATA in Bey

I, alleging that WMATA retaliated against him in violation of the Rehabilitation Act, after he

filed the January 2011 charge of discrimination against WMATA with the EEOC.  See Bey I

Compl. ¶¶ 193–200.

In Bey I, WMATA's earlier motion for summary judgment on the plaintiff's retaliation

claim on the ground that all of its actions against the plaintiff were "legitimate," "non-

discriminatory," and motivated by safety-related concerns, rather than retaliation,was rejected by

the Court.  See McFadden v. Wash. Metro. Transit Auth., 204 F. Supp. 3d 134, 150–52 (D.D.C.

2016) (Walton, J.).  WMATA now moves for summary judgment again on the retaliation claims

in both Bey I and Bey II Complaints on the same grounds.  Compare WMATA's 1st Mot. for

Summ. J. Mem at 14 (arguing that the plaintiff's retaliation claim fails on the merits because

WMATA had "legitimate, non-discriminatory reasons for the actions it took regarding [the] [p]laintiff," stemming from "repeated incidents of safety violations by [the] [p]laintiff"), with WMATA's Supp. Summ. J. Mem. at 20 (arguing that the plaintiff's retaliation claims fail on the merits because "there is a legitimate, non-discriminatory reason (that being safety) proffered by WMATA").

WMATA's argument that "the record is entirely devoid of evidence of intent of [WMATA] to retaliate against [the] [p]laintiff," WMATA's Supp. Summ. J. Mem. at 20, is contradicted by the Court's holding in Bey I that "the plaintiff has produced sufficient evidence from which a reasonable juror could conclude that WMATA's proffer of safety-related considerations were pretextual and that WMATA was likely motivated more by retaliation against the plaintiff." McFadden, 204 F. Supp. 3d at 150; see also id. at 150–52 (relying on evidence that (1) the appeal board included an individual who had been a subject of grievances filed by the plaintiff; (2) the plaintiff was referred to the Committee for non-compliance with the terms of the Employee Assistance Program for expressing that he would resume taking Adderall, even though the Employee Assistance Program contract does indicate that it is a violation to suggest the intended use of a prescribed medication; (3) the Committee was chaired by Cooper-Lucas, "who had a tenuous working relationship with the plaintiff"; (4) Cooper-Lucas incorrectly expressed to the Committee that the use of Adderall was prohibited by federal regulations and that the plaintiff had never submitted any prescription reporting forms for his use of Adderall in compliance with WMATA's policy; (5) the Committee hearing "transcript contain[ed] numerous factual inaccuracies and discrepancies that may have clouded the judgment of the Committee members and contributed to the Committee concluding that administrative action, and specifically termination, was warranted"; and (6) "the plaintiff was constantly interrupted [during

the Committee meeting] and never given an adequate opportunity to defend himself or present evidence to support his arguments and actions"). WMATA has proffered no additional facts or evidence that would persuade the Court to alter its prior conclusion; rather, it merely rehashes the same argument that the Court previously rejected. See WMATA's Supp. Summ. J. Mem. at 20. The Court therefore denies WMATA's motion for summary judgment on Count II of the Bey I Complaint and Counts V and VI of the Bey II Complaint for the same reasons that it denied the identical arguments in Bey I.

### 2. The Plaintiff's Claims Against the Individual WMATA Defendants

#### a. Defamation Claim

WMATA argues that the individual WMATA defendants are immune from the plaintiff's defamation claim pursuant to the interstate compact that created WMATA (the "WMATA Compact"). See WMATA's Summ. J. Mem. at 5–8. "Section 80 of the [WMATA] Compact waives [WMATA's sovereign] immunity for torts 'committed in the conduct of any proprietary function,' while retaining immunity for torts committed by its agents 'in the performance of a governmental function.'" Beebe v. Wash. Metro. Area Transit Auth., 129 F.3d 1283, 1287 (D.C. Cir. 1997) (quoting D.C. Code § 1-2431(80) (1981)). Section 80 of the WMATA Compact also "provides that the 'exclusive remedy' for any action for which WMATA is liable 'shall be by suit against the Authority'"; thus, "for torts committed in the course of proprietary or ministerial functions, WMATA is liable and its employees immune." Id. at 1288 (quoting D.C. Code § 1-2431(80)). Further refining this rule, the District of Columbia Circuit in Beebe held that WMATA employees "enjoy absolute immunity from state-law tort actions when the conduct at issue falls 'within the scope of their official duties and the conduct is discretionary in nature.'"

Id. at 1289 (quoting Westfall v. Erwin, 484 U.S. 292, 297–98 (1988)). "[T]he burden of establishing immunity [is] on the official." Id. (citing Westfall, 484 U.S. at 299).

Initially, the plaintiff states that "Cooper-Lucas is the sole remaining individual defendant against whom [he alleges a] claim of defamation," Pl.'s Opp'n to WMATA's Summ. J. Mot. at 3,[12] and he contends that Cooper-Lucas's purportedly defamatory statements "were within the outer perimeter of her official [j]ob [d]uties," id. at 5; see also Bey II Compl. ¶¶ 172–74, 176, 178 (asserting that Cooper-Lucas allegedly made defamatory statements to the ADA Panel, during arbitration, and to Dr. Hertzberg during the medical evaluation process). Specifically, the plaintiff argues that Cooper-Lucas's allegedly defamatory statements were not within the scope of her official duties because the statements involved medical opinions. See Pl.'s Opp'n to WMATA's Summ. J. Mot. at 5. In response, WMATA maintains that "Cooper-Lucas was clearly acting within the scope of her employment as head of the medical branch with respect to all issues related to [the p]laintiff." WMATA's Summ. J. Mem. at 10.

The Court agrees with WMATA that Cooper-Lucas is entitled to immunity because she made the allegedly defamatory statements while acting within the scope of her official duties and because her determinations about the plaintiff's actions and his use of Adderall were discretionary in nature. As WMATA notes, see id. at 9–10, and as the Court previously concluded,

> Cooper-Lucas, when the allegedly defamatory statements were made, was the Manager of the Medical Services and Compliance Branch, and in that capacity, was responsible for ensuring that WMATA and its employees were in "compliance with Federal law" and, to achieve this end, "manage[d], direct[ed], and evaluate[d] [WMATA's] medical services branch and administers all [WMATA] medical, employee assistance and compliance operations programs."

---

[12] Pursuant to the plaintiff's motion to dismiss certain individual defendants from this case, see Pl.'s Mot. to Dismiss, the Court, on February 6, 2017, dismissed the plaintiff's claims against Donna Gaffney, John Coleman, Gina Pervall, and James Lipscomb. See Min. Order (Feb. 6, 2017).

McFadden, 204 F. Supp. 3d at 155–56 (citation omitted).  Therefore, because Cooper-Lucas is immune to the plaintiff's defamation claim under the WMATA Compact, the Court grants WMATA's motion for summary judgment on Counts IX through XX of the Bey II Complaint.

### b. Civil Conspiracy Claims

WMATA next argues that summary judgment on the plaintiff's civil conspiracy claim for defamation against Cooper-Lucas is appropriate because the plaintiff has not satisfied the elements of the underlying tort.[13]  See WMATA's Summ. J. Mem. at 13–15.  The Court agrees.

In the District of Columbia, "'[c]ivil conspiracy is not an independent tort but only a means for establishing vicarious liability for an underlying tort.'"  Nader v. Democratic Nat'l Comm., 567 F.3d 692, 697 (D.C. Cir. 2009) (alteration in original) (quoting Hill v. Medlantic Health Care Grp., 933 A.2d 314, 334 (D.C. 2007)).  Therefore, "[a] claim of civil conspiracy [ ] fails unless the elements of the underlying tort are satisfied."  Nader, 567 F.3d at 697 (citing Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp., 749 A.2d 724, 738 (D.C. 2000)).  Here, sovereign immunity precludes the plaintiff's defamation claim against Cooper-Lucas, which is the underlying tortious act serving as the predicate for the plaintiff's civil conspiracy claim.  See Bey II Compl. ¶ 183 (alleging that the individual WMATA defendants are "jointly and severally liable [for civil conspiracy] for each count of the [eleven] counts of defamation raised"); see also Smalls v. Emanuel, 840 F. Supp. 2d 23, 34–36 (D.D.C. 2012) (holding that the plaintiff's civil conspiracy claim failed because all of the underlying torts failed, including the plaintiff's defamation claim, which sovereign immunity precluded).  Consequently, the plaintiff's civil

---

[13] In his opposition to the Union's motion for summary judgment, the plaintiff states that he "do[es] not wish to pursue [his] claim [of civil conspiracy for intentional infliction of emotional distress] against any of the remaining defendants at this time."  Pl.'s Opp'n to Union's Summ. J. Mot. at 21 (emphasis added).  Accordingly, the Court will dismiss Counts XXXIV through XLII because they have been withdrawn by the plaintiff.  See Bey II Compl. ¶¶ 187–89.  Therefore, the Court need not address WMATA's arguments on this claim.

conspiracy claim for defamation cannot survive either. Accordingly, the Court grants WMATA's motion for summary judgment on Counts XXI through XXXII of the <u>Bey II</u> Complaint.

### C. The Union's Motion for Summary Judgment

#### 1. The Plaintiff's "Hybrid Action" Claim Against the Union

The Union moves for summary judgment on the plaintiff's "hybrid action" claim on the basis that the plaintiff has offered no evidence that Union breached its duty of fair representation to the plaintiff or that WMATA breached the collective bargaining agreement. <u>See</u> Union's Summ. J. Mem. at 7, 13–14.

As a preliminary matter, the Court notes that the plaintiff characterizes his claim as a "breach of duty of fair representation" claim under Section 301 of the Labor Management Relations Act, rather than as a hybrid action claim. <u>See</u> <u>Bey II</u> Compl. ¶¶ 155–66. But "'[a] claim for breach of duty of fair representation really consists of 'two [intertwined] causes of action,' one against the employer for breach of the [collective bargaining agreement] and the other against the union 'for breach of the union's [duty of fair representation], which is implied' from the [National Labor Relations Act].'" <u>Harris v. Amalgamated Transit Union Local 689</u>, 825 F. Supp. 2d 82, 86 (D.D.C. 2011) (quoting <u>Cephas v. MVM, Inc.</u>, 520 F.3d 480, 485 (D.C. Cir. 2008)). The Court will therefore construe the plaintiff's breach of duty of fair representation claim as a hybrid action claim.

In deciding a plaintiff's hybrid action claim, "the Court must initially determine the threshold issue of whether a bargaining representative has breached its duty of fair representation." <u>Brown v. Gino Morena Enters.</u>, 44 F. Supp. 2d 41, 44 (D.D.C. 1999); <u>see also</u> <u>Gwin v. Nat'l Marine Eng'rs Beneficial Ass'n</u>, 966 F. Supp. 4, 7 (D.D.C. 1997) ("The duty of

fair representation is addressed first, because it is the 'indispensable predicate' to the suit against the employer." (quoting <u>United Parcel Serv. v. Mitchell</u>, 451 U.S. 56, 62 (1981))). "A union breaches its duty of fair representation when its conduct towards represented employees is 'arbitrary, discriminatory, or in bad faith.'" <u>Thomas v. NLRB</u>, 213 F.3d 651, 656 (D.C. Cir. 2000) (quoting <u>Vaca v. Sipes</u>, 386 U.S. 171, 190 (1967)).

Although the basis for the plaintiff's claim is not clearly articulated, it appears to the Court that the plaintiff contends that the Union's actions were arbitrary because the Union (1) chose not to arbitrate some of the plaintiff's grievances, <u>see</u> <u>Bey II</u> Compl. ¶¶ 156, 159, 165, (2) "perfunctorily settled grievances adverse to [the] [p]laintiff and beneficial to WMATA," <u>id.</u> ¶ 160; <u>see also</u> Pl.'s Opp'n to Union's Summ. J. Mot. at 12–14 (alleging that the Union's settlement of the plaintiff's termination grievance was unsatisfactory because it did not "provid[e] full restoration of [the plaintiff's] lost wages" and because, as part of the settlement, the Union withdrew the plaintiff's Employee Assistance Program grievance); <u>id.</u> at 15–16 (alleging that the Union's settlement of the plaintiff's workload distribution grievance was unsatisfactory because one of the terms in the settlement agreement was "ambiguous" and the settlement was reached after the plaintiff was medically disqualified), and (3) arbitrated the plaintiff's grievances in a "perfunctory" manner, <u>see</u> <u>Bey II</u> Compl. ¶¶ 157, 161–64; <u>see also</u> <u>id.</u> ¶ 95 (alleging that during arbitration, the Union "concealed audio evidence from the arbitration record" and "took care to ensure the transcripts produced during [the] [p]laintiff's reasonable accommodation hearing contained only the portions of [the] [p]laintiff testing and not the portion that included what was said before he entered the room"); <u>id.</u> ¶ 104 (alleging that the Union "refused" to submit a previous independent medical examination report to the arbitrator). The plaintiff also claims that the Union acted in bad faith "by colluding with WMATA to allow [the]

plaintiff to be unfairly targeted and harassed on the basis of his disability." Id. ¶ 156. The Union responds that "[t]here is no colorable claim made against [it]" because "[n]othing in the record demonstrates that [the Union] acted in bad faith or handled the [p]laintiff['s] grievances arbitrarily and capriciously." Union's Summ. J. Reply at 17. The Court agrees with the Union.

The Supreme Court has counseled that "[a]ny substantive examination of a union's performance . . . must be highly deferential," Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 78 (1991), and that a union's action is considered arbitrary "only if it can be fairly characterized as so far outside a 'wide range of reasonableness' that it is wholly irrational," id. (quoting Ford Motor Co. v. Huffman, 345 U.S. 330, 338 (1953)). And, a union may be deemed to have acted in bad faith only when "there is [ ] substantial evidence of fraud, deceitful action[,] or dishonest conduct." Humphrey v. Moore, 375 U.S. 335, 348 (1964). Therefore, "[c]ourts have applied a 'demanding standard' for finding bad faith under the duty of fair representation, requiring a union's actions toward unit employees to be sufficiently egregious or so intentionally misleading [as] to be invidious." Int'l Union of Elec., Elec., Salaried, Mach., & Furniture Workers, AFL-CIO v. NLRB, 41 F.3d 1532, 1537 (D.C. Cir. 1994) (alteration in original) (citations and internal quotation marks omitted).

Here, the record does not support the plaintiff's contention that the Union's representation of him was arbitrary. "[A] union does not breach its duty of fair representation, and thereby open up a suit by the employee for breach of contract, merely because it settled a grievance short of arbitration," Vaca, 386 U.S. at 192, nor does it breach its duty of fair representation if it "does not obtain the full relief sought or [if] the union member is not satisfied with the terms of the settlement," Brown, 44 F. Supp. 2d at 45 (collecting cases). Therefore, the Union's decisions not to arbitrate all of the plaintiff's grievances and to settle without securing

all of the plaintiff's requested relief are not evidence that the Union acted arbitrarily in its representation of the plaintiff. See Vaca, 386 U.S. at 192; Brown, 44 F. Supp. 2d at 45.

Moreover, "[i]n order to find that a union's representation was 'perfunctory,' evidence that the union acted with reckless disregard for the employee's rights is required . . . . A union's duty does require some 'minimal investigation' of an employee's grievance, but the quantum that will be considered 'minimal' is quite small." Vaca, 386 U.S. at 194 (finding that the Union's representation was not "perfunctory" when it processed the employee's grievance, attempted to gather evidence to prove the employee's case, attempted to secure less vigorous work for the employee with the employer, and joined the employer's efforts to have the employee rehabilitated); Castelli v. Douglas Aircraft Co., 752 F.2d 1480 (9th Cir. 1985) (finding "[t]hat [although] the Union business representative spent no more than one and a half hours in investigation and preparation for the arbitration, and did not call key witnesses, [the Union's actions] constituted neither arbitrariness nor bad faith"); Gwin, 966 F. Supp. at 8 (finding that the Union did not act perfunctorily when it met with the plaintiff for several hours prior to the arbitration hearing, prepared outlines of examination questions, cross-examined witnesses, and put on a supporting witness's testimony). Further, failure to introduce evidence into the record during an arbitration is not alone evidence of bad faith. See Castelli, 752 F.2d at 1483 ("The [union] business representative's failure to introduce into evidence jewelry found upon [the employee], or to cross-examine a security officer on a particular point may be seen as tactical errors. But if errors, they were at most errors of judgment, and not evidence of breach of the duty of fair representation.").

Contrary to the plaintiff's position, the record does not demonstrate that the Union's representation was perfunctory. First, the plaintiff offers no evidence to show that the Union did

not prepare for arbitration hearings. By his own admission, the plaintiff spent time with the Union representative preparing for arbitration in August 2011, Pl.'s Decl. ¶ 28, and in April 2013, and "from previous interactions [he] knew [the Union representative] to be well prepared," Bey II Compl. ¶ 93. Further, the fact that the Union chose not to submit evidence into the record during arbitration is at most "an error of judgment, and not evidence of breach of the duty of fair representation." See Castelli, 752 F.2d at 1483.

Nor does the record support the plaintiff's contention that the Union's representation of the plaintiff was in bad faith. The plaintiff's conclusory allegations that the Union colluded with WMATA do not satisfy the "demanding standard" needed to prove bad faith. See Int'l Union, 41 F.3d at 1537; Gulaksen v. United Air Lines, 68 F. Supp. 3d 66, 71 (D.D.C. 2014).

Having concluded that the plaintiff has not made the threshold showing that the Union breached its duty of fair representation to him, see Brown, 44 F. Supp. 2d at 44, the Court need not reach the issue of whether WMATA breached the collective bargaining agreement, see Kornegay v. Master Sec., LLC, 920 F. Supp. 2d 1, 8 (D.D.C. 2013). Accordingly, the Court grants the Union's motion for summary judgment on Count VIII of the Bey II Complaint.[14]

## 2. The Plaintiff's Civil Conspiracy Claims Against the Union

In alleging a civil conspiracy claim predicated on the tort of defamation against the Union, the plaintiff states that "[e]ach of the individual [WMATA] defendants identified in the [eleven] counts of defamation and [the Union] are jointly and severally liable for each of the

---

[14] WMATA also moves for summary judgment on the plaintiff's hybrid action claim. See WMATA's Summ. J. Mem. at 16–17. However, as WMATA notes, the plaintiff in his Bey II Complaint "present[s] no legally cognizable claim against WMATA." WMATA's Summ. J. Mem. at 16; see also Bey II Compl. ¶¶ 155–66. Nor does the plaintiff address WMATA's hybrid action argument in his opposition. See generally Pl.'s Opp'n to WMATA's Summ. J. Mot. While the District of Columbia Circuit has explained that "[t]he employee may bring his action against the employer, the union, or both," Cephas, 520 F.3d at 485, here, the plaintiff has chosen to bring his hybrid action claim only against the Union, not WMATA. Therefore, the Court denies WMATA's motion for summary judgment on Count VIII because a hybrid action claim has not been asserted against WMATA.

[eleven] counts of defamation" asserted.  Bey II Compl. ¶ 183.  The Union argues that it is

entitled to summary judgment on the plaintiff's civil conspiracy claim against it because "the

[p]laintiff has failed to show that any of the individuals [he has identified] are actually liable for

defamation," Union's Summ. J. Mem. at 21 (identifying Gina Pervall, John Coleman, James

Lipscomb, Cooper-Lucas, Donna Gaffney, and Dr. Leonard Hertzberg as the individuals that

"made false statements about him in the ADA hearing, arbitration, and the independent medical

examination"), and because the plaintiff would be unable to establish the "threadbare essentials

to [establish] a valid [civil conspiracy claim]," id. at 22.[15]  The Court agrees with the Union.

As the Court previously noted, "'[c]ivil conspiracy is not an independent tort but only a

means for establishing vicarious liability for an underlying tort.'"  Nader, 567 F.3d at 697

(quoting Hill, 933 A.2d at 334).  The plaintiff fails to identify any allegedly defamatory

statement made by the Union against him; rather, he asserts that the Union is vicariously liable

for the allegedly defamatory statements made by the individual WMATA defendants.  See Bey II

Compl. ¶ 183.  Having already dismissed the plaintiff's defamation claim against the individual

WMATA defendants, see supra Part III.B.2.a., there is no underlying tort to serve as a predicate

for the plaintiff's civil conspiracy claim for defamation against the Union, see Nader, 567 F.3d at

697.  And contrary to the plaintiff's contention, see Pl.'s Opp'n to Union's Summ. J. Mot. at 22

(arguing that he must only establish the elements necessary to show an illegal conspiracy), the

lack of a predicate underlying tort extinguishes the plaintiff's ability to proceed with his civil

conspiracy claim.  Accordingly, the Court grants the Union's motion for summary judgment on

Counts XXI through XXXII of the Bey II Complaint.

---

[15] As the Court previously noted, the plaintiff has withdrawn his claim of civil conspiracy for intentional infliction of emotional distress against all defendants, including the Union.  See supra at 28 n.13.  Therefore, the Court need not address the Union's arguments on this claim.

### 3. The Plaintiff's Retaliation Claim Against the Union

The plaintiff asserts a retaliation claim against the Union under the Rehabilitation Act. See Bey II Compl. ¶¶ 145–51.  The Union argues that it is entitled to summary judgment on this claim because it was not the plaintiff's employer and therefore, the plaintiff is unable to establish a viable retaliation claim against it.  See Union's Summ. J. Mem. at 23–24.  The Court agrees with the Union.

In order to establish a prima facie case of retaliation under the Rehabilitation Act, the plaintiff must demonstrate that "(1) he engaged in statutorily protected activity, (2) the employer was aware of the activity; (3) the plaintiff suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action." Duncan v. Wash. Metro. Area Transit Auth., 214 F.R.D. 43, 50 (D.D.C. 2003) (citation omitted). The Union "is a Labor Union which is organized for the purpose of collective bargaining with [WMATA]," Union's Summ. J. Mem. at 22, and "operates solely and exclusively as a bargaining unit for various classes of WMATA employees," id. at 23.  The Union "does not act as an employer for their members nor [is it] involved in the administration of the transit system.  [And, a]t no time was the [p]laintiff employed by [the Union]."  Id.  Furthermore, section 152 of the National Labor Relations Act states that "[t]he term 'employer' . . . shall not include . . . any labor organization (other than when acting as an employer), or anyone acting in the capacity of officer or agent of such labor organization."  29 U.S.C. § 152(2); see also Union's Summ. J. Mem. at 23 (noting that 29 U.S.C. § 152(2) was "formally adopted and cited in section 66 of the [WMATA] Compact").  The plaintiff acknowledges that the Union was not his employer, see Pl.'s Opp'n to Union's Summ. J. Mot. at 22, and consequently, because the Union was not the plaintiff's employer and thus could not have taken adverse employment actions against the

plaintiff in violation of the Rehabilitation Act, the Court grants the Union's motion for summary judgment on Counts V and VI of the Bey II Complaint.

## IV.    CONCLUSION

For all of the foregoing reasons, the Court denies both the Union's and the plaintiff's cross-motions to strike.  The Court also grants the Union's motion for summary judgment, grants in part and denies in part WMATA's motion for summary judgment,[16] and grants in part and denies in part WMATA's supplemental motion for summary judgment.[17]

**SO ORDERED** this 11th day of October, 2018.

REGGIE B. WALTON
United States District Judge

---

[16] The Court notes that the plaintiff initially brought a hostile work environment claim against both WMATA and the Union.  See Bey II Compl. ¶¶ 152–54.  However, in his opposition to WMATA's motion for summary judgment, the plaintiff, in discussing WMATA's motion for summary judgment on his hostile work environment claim, states that "[he] see[s] no need to keep more [R]ehabilitation [A]ct claims (harassment) given the [f]ederal cap placed on compensatory damages for claims brought under the [R]ehab[ilitation] [A]ct, [and] [he] see[s] no need to increase [his] workload to meet the burden of proof at trial."  Pl.'s Opp'n to WMATA's Mot. for Summ. J. at 13.  Accordingly, the Court will dismiss Count VII of the Bey II Complaint because it has been withdrawn by the plaintiff.

[17] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.