UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **COREY L. BEY,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,**<br><br>    **Defendant.** | Civil Action No. 1:14-cv-01115-RBW |

**DEFENDANT WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY'S
REPLY TO PLAINTIFF'S OBJECTION TO MOTION *IN LIMINE*
AS TO LOST WAGES BEYOND THE DATE
HE ACCEPTED EMPLOYMENT AS A STATION MANAGER**

    **COMES NOW** Defendant, Washington Metropolitan Area Transit Authority (hereinafter "WMATA"), by and through undersigned counsel, and per the court's Order of February 25, 2020 (Dkt. 222), hereby replies to Plaintiff's Opposition to the Motion *in Limine* to prevent him from presenting evidence, or making reference to, any lost wages (back pay or future pay) beyond the date he accepted employment as a station manager at WMATA (January 13, 2013).

    **I.**    **ARGUMENT**

        **a.**    **Plaintiff Is Incorrect That His Wages as a Bus Mechanic Were More Than His Wages as a Station Manager**

    In his Objection, Plaintiff argues that his pay as a bus mechanic was more than his pay as a station manager. However, this is incorrect, as in Plaintiff's last full year as a bus mechanic in 2011 – he was paid $43,563.82. (*See* Def. Ex. 4, Dkt. 198 (2011 year-end wages)). In Plaintiff's last full year as a station manager in 2013 – he was paid $22,342.29 more – for a year-end total of $65,906.11. (*See* Def. Ex. 5, Dkt. 198 (2013 year-end wages)). Per the affidavit of Mr.

McGee, the benefits available to the mechanic and station manager positions are the same. (*See* Def. Ex. 6, Dkt. 198)

Unsurprisingly, Plaintiff tries to avoid using the 2011-year as a baseline for his bus mechanic position by arguing "he did not receive an income from [WMATA] for more than half of 2011." (Pl. Obj. at n. 1.) This is incorrect. Plaintiff was reinstated per the terms of a September 9, 2011 settlement agreement to resolve his grievance with WMATA, and per the terms of the settlement agreement Plaintiff was reinstated as a bus mechanic <u>with seniority and benefits restored, and he was paid back pay</u>. (*See* Def. Ex. 8, Dkt. 198 (Settlement Agreement); Defs. Ex. 4, Dkt. 198 (2011 year-end wages showing payment for "grievance pay" and "retro pay"); Def. Ex. 7, Dkt. 198 at 215:7-21.)

A look at Plaintiff's hourly wage between the bus mechanic and station manager positions similarly bears out that the station manager position was a higher paying position. For the bus mechanic position, Plaintiff was making the following hourly wages:

- 2010: $23.43 per hour and up to $24.13 per hour;
- 2011: $25.60 per hour; and
- 2012: $25.60 per hour.

(*See* Def. Ex. 1 at ¶ 5.) In 2013, when Plaintiff started working as a station manager, he was paid the following hourly wages per year:

- 2013: $26.37 per hour; and
- 2014: $27.42 per hour and up to $30.47 per hour.

Plaintiff even admits in his original sworn opposition brief that his hourly wages as a station manager were greater than when he was employed as a bus mechanic. (*See* Pl. Opp., Dkt.

186 at 2 (Plaintiff stated that he made $23.42-$25.60 per hour as a bus mechanic as compared to $26.37-$27.42 per hour as a station manager.)).

As Plaintiff was making more money as a station manager in 2013, after his alleged discriminatory termination from the bus mechanic position in 2012, his back pay and front pay damages cease at the time he accepted employment as a station manager in January 2013.

    b. **Plaintiff's Reliance on Alleged Wages Increases in the CBA Are Incorrect and Irrelevant**

Plaintiff tries to create confusion by arguing that the CBA provisions would have entitled him to greater wages as a bus mechanic as opposed to a station manager. However, any resulting increase in wages over time are of a fixed variety – <u>the rate of pay as a bus mechanic and a station manager increase the same over time</u>. Therefore, Plaintiff's reliance on the CBA provisions, are irrelevant.

A look at Plaintiff's <u>actual</u> hourly wages received in 2012 and 2013 bear this out. In 2012, Plaintiff made an hourly wage of $25.60 per hour as a bus mechanic. In 2013 – when Plaintiff argues he would have received a 3% raise as a bus mechanic – Plaintiff made an hourly wage of $26.37 as a station manager – <u>which is a 3% raise</u> over his 2012 hourly wage. Similarly, Plaintiff claims that he would have made a 4% raise from 2013 to 2014 – which in fact his wages did increase by that amount when his hourly rate as a station manager went from $26.47 per hour to $27.42 per hour, <u>which is a 4% increase</u>.

Plaintiff's reliance on the alleged wages increases in the CBA are incorrect and irrelevant, and should be disregarded by the Court.

    c. **Plaintiff Is Not Entitled to Any Front Pay Damages**

Plaintiff fails to oppose in any meaningful way the argument that front pay is appropriate only when "the fact-finder can reasonably predict that the plaintiff has <u>no reasonable prospect</u> of

3

obtaining comparable alternative employment." *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1182 (2d Cir. 1996) (emphasis added). This is buttressed by the fact that front pay is meant to be temporary, and not permanent, as it would then be a windfall. *See Peyton v. DiMario*, 287 F.3d 1121, 1130 (D.C. Cir. 2002) ("front pay is intended to be temporary in nature."); *Gotthardt v. AMTRAK*, 191 F.3d 1148, 1157 (9th Cir. 1999) ("Thus, front pay is intended to be temporary in nature. An award of front pay does not contemplate that a plaintiff will sit idly by and be compensated for doing nothing.").

As described in WMATA's motion and this reply, Plaintiff did obtain comparable employment after he was medically disqualified as a bus mechanic -- by becoming employed as a WMATA station manager, and after that, Plaintiff admitted during his deposition that he held a number of comparable employment positions to that of the WMATA bus mechanic position in which his jobs were paying him $26 per hour for a full-time job.

As Plaintiff did in fact find comparable alternative employment, a front pay award is not warranted.

### d. Plaintiff's Alleged Dates of Unemployment and Newly Produced Damages Information Were Not Previously Disclosed In Discovery and Should Be Disregarded by the Court

The calculations, dates of unemployment, cost information and benefits information that Plaintiff produces <u>for the first time</u> in his Objection were never previously disclosed in answers to interrogatories or in his Rule 26 disclosures.

WMATA's interrogatory no. 5 requested that Plaintiff identify his employers, dates of employment, salary/wages, job title, job duties and supervisor since he left WMATA. (*See* Def. Ex. 9, Dkt. 198, WMATA Interr.). Interrogatory no. 11 requested that Plaintiff describe all monetary damages, including past or future lost wages and non-economic damages, and how

4

such calculations were arrived at. (*See id.*) As to both interrogatories, Plaintiff provided no answer at all. (*See* Def. Ex. 10, Dkt. 198, Pl. Answer to Interr. Nos. 5 and 11.) This information as to damages was also not provided in any detail in Plaintiff's Rule 26 initial disclosures. (*See* Case No. 1:12-cv-940, Dkt. 53 (initial disclosure in *Bey I*) and Case No. 1:14-cv-1115, Dkt. 48 (initial disclosure in *Bey II*)).

Fed. R. Civ. P. 26(a)(1)(A)(iii) required Plaintiff to provide, at the outset of discovery, a computation of each category of damages he claimed, and Rule 26(e) required Plaintiff to supplement his disclosure in a timely manner once he learned that it was incomplete. However, Plaintiff never disclosed the types of damages he seeks or a computation of such damages.

Plaintiff should not be permitted to place evidence as to his damages in the record that were not presented during discovery. There is no substantial justification that would permit Plaintiff to not disclose his damages evidence in response to Defendant's interrogatory request or his initial disclosure requirement. Rather, Defendant is prejudiced by such action. *See Armenian Assembly of Am., Inc. v. Cafesjian*, 746 F. Supp. 2d 55, 70 (D.D.C. 2010) (grating defendant's motion to strike the plaintiff's asserted damages as it was not disclosed during discovery or initial disclosures, but rather raised in the pre-trial statement.); *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179-80 (9th Cir. 2008) ("Later disclosure of damages would have most likely required the court to create a new briefing schedule and perhaps re-open discovery, rather than simply set a trial date. Such modifications to the court's and the parties' schedules supports a finding that the failure to disclose was not harmless."); *NutraSweet Co. v. X-L En"g Co.*, 227 F.3d 776, 785-786 (7th Cir. 2000) (finding harm based on scheduling issues).

Therefore, these arguments should be disregarded by the Court as WMATA has no way to counter this information and is prejudiced by Plaintiff's conduct during discovery.

5

## II.     CONCLUSION

**WHEREFORE**, for the reasons set forth in WMATA's Motion *in Limine*, and this Reply, Plaintiff should be prevented from presenting evidence, or making reference to, any lost wages (back pay or future front pay) beyond the date he accepted employment as a station manager at WMATA (January 13, 2013).

Respectfully submitted,

*/s/ Nimalan Amirthalingam*
Christopher E. Hassell, Esquire (#291641)
Nimalan Amirthalingam, Esquire (#485117)
**BONNER KIERNAN TREBACH & CROCIATA, LLP**
1233 20th Street, NW, Suite 800
Washington, D.C. 20036
T: (202) 712-7000
F: (202) 712-7100
chassel@bonnerkiernan.com
namirthalingam@bonnerkiernan.com
*Counsel for Defendant Washington Metropolitan Area Transit Authority*

Michael K. Guss, Esquire (# 465171)
**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY**
600 Fifth Street, NW
Washington, DC 20001
T: 202-962-1468
F: 202-962-2550
mkguss@wmata.com
*Counsel for Defendant Washington Metropolitan Area Transit Authority*

## CERTIFICATE OF SERVICE

I certify that on March 27, 2020, a copy of the foregoing was served *via* the court's electronic filing system on all counsel of record.

/s/ *Nimalan Amirthalingam*
Nimalan Amirthalingam